582 A.2d 831

DIVISION OF CONSUMER AFFAIRS, COMPLAINANT-RESPONDENT, v. GENERAL ELECTRIC COMPANY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 30, 1990—Decided November 16, 1990.

Before Judges PRESSLER, DEIGHAN and BAIME.

*Hope S. Cone* argued the cause for appellant (*Pitney, Hardin, Kipp & Szuch,* attorneys, *Clyde A. Szuch* on the brief).

*John T. Ambrosio,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney, *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *John T. Ambrosio,* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This is an appeal from a determination of the Division of Consumer Affairs (Division), finding that General Electric Company (General Electric) violated regulations promulgated under the Consumer Fraud Act (*N.J.S.A.* 56:8-1 through -48) by failing to include a reference price in a price reduction advertisement. The regulations require that an "advertiser" who suggests that merchandise is being offered for a price less than

that for which it has been routinely sold set forth in the advertisement either its pre-sale selling price, the price usually charged by competitors in the trade area or the manufacturer's suggested retail price. *See N.J.A.C.* 13:45A–9.1 and 9.3(a)(3)i, ii, iii. An "advertiser" is defined as a person "who in the ordinary course of business is engaged in the sale or rental of merchandise at retail." *N.J.A.C.* 13:45A–9.1. It is undisputed that General Electric does not sell or offer its products at retail, but rather it manufacturers goods and wholesales them to retail distributors. The administrative law judge (ALJ) found that General Electric was nonetheless an "advertiser" because it "voluntarily advertise[d] to promote the retail sales" of its products. The initial decision became final when it was not acted upon by the Division within 45 days. *See N.J.S.A.* 52:14B–10(c). We now reverse.

The facts are not in dispute and are essentially a matter of public record. On October 22, 1987, General Electric, through an independent advertising agency, caused an advertisement to be placed in the *Star Ledger,* stating that a "[n]ational [a]ppliance [s]ale" was in progress, and that it had reduced the price of several identified appliances to its dealers. The advertisement represented that the savings might be "passed on" and that potential customers should contact dealers in their area for information as to price. There is no suggestion in the record that the facts represented in the advertisement were untrue. The Division concedes that General Electric did in fact reduce the prices of the identified items which it charged its dealers. However, the advertisement did not contain a pre-sale reference price for the advertised appliances. The Division thus charged General Electric with having violated *N.J.A.C.* 13:45A–9.3(a)(3)i, ii, and iii for having failed to include a reference price in a price reduction advertisement.

General Electric denied liability and the matter was referred to the Office of Administrative Law as a contested case. Before the ALJ, it was stipulated that General Electric is engaged in the business of manufacturing, distributing and servicing

consumer appliances and electronics. However, it was also agreed that it does not offer for sale or sell any products at retail. Instead, all its products are distributed to the public by a network of independent retailers. General Electric cannot, and does not, require retailers to sell its products at a specific price. Nor can it dictate actual percentage or specific dollar reductions.

It is against this factual and regulatory backdrop that we consider the ALJ's decision, adopted by the Division by reason of its inaction, that General Electric "depart[ed] from its pure fabrication function" and engaged in the sale of its products at retail. As we noted at the outset of our opinion, this determination was grounded in the finding that General Electric, by its advertising, promoted the retail sales of its dealers. The critical question presented is whether a manufacturer "is engaged in the sale or rental of merchandise at retail," under *N.J.A.C.* 13:45A–9.1, by reason of its advertisement which seeks to promote retail sales by independent retailers.[1]

We commence our analysis by referring to the unbroken line of decisions which require that the Consumer Fraud Act and its implementing regulations be liberally construed in favor of protecting consumers. *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 69, 494 *A.*2d 804 (1985); *Fenwick v. Kay American Jeep, Inc.,* 72 *N.J.* 372, 378, 371 *A.*2d 13 (1977); *Levin v. Lewis,* 179 *N.J.Super.* 193, 200, 431 *A.*2d 157 (App.Div.1981); *State v. Hudson Furniture Co.,* 165 *N.J.Super.* 516, 520, 398 *A.*2d 900 (App.Div.1979). Where, as here, a commercial practice is not inherently deceptive or fraudulent and is thus not violative of the enabling act itself under *N.J.S.A.* 56:8–2, we are obliged nonetheless to liberally apply the regulations adopted by the Department of Law and Public Safety. *See Chattin v. Cape*

---

[1] We stress the limited contours of the issue presented. Even though not a retailer, a manufacturer may be found liable under *N.J.S.A.* 56:8–2 where it engages in fraudulent or deceptive advertising. As we pointed out previously, the representations made in the advertisement in this case were entirely true.

*May Greene, Inc.,* 243 *N.J.Super.* 590, 603 n. 4, 581 *A.*2d 91 (App.Div.1990); *Levin v. Lewis,* 179 *N.J.Super.* at 200, 431 *A.*2d 157; *cf. Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* at 69 n. 6, 494 *A.*2d 804. It bears repeating that the act and the regulations are not "aimed solely at the 'shifty, fast talking and deceptive merchant.' " *Hyland v. Zuback,* 146 *N.J.Super.* 407, 413, 370 *A.*2d 20 (App.Div.1976). The statutory and regulatory scheme is also designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services.

We also acknowledge the fundamental maxim that the construction of a statute or regulation by the administrative agency charged with its enforcement is entitled to great weight. *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575, 384 *A.*2d 795 (1978). We are obliged to accord substantial deference to an interpretation of a statute or regulation by the agency responsible for its implementation and application. *Mortgage Bankers Ass'n v. New Jersey Real Estate Comm'n.,* 102 *N.J.* 176, 506 *A.*2d 733 (1986); *In re Adamar,* 222 *N.J.Super.* 464, 469–470, 537 *A.*2d 704 (App.Div. 1988); *In re Lembo,* 151 *N.J.Super.* 242, 249, 376 *A.*2d 971 (App.Div.1977). However, "[t]his deference is ... not total, as the courts remain the 'final authorities' on issues of statutory [or regulatory] construction...." *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* at 575, 384 *A.*2d 795; *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 560–564, 362 *A.*2d 13 (1976); *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973). We are not constrained to "rubber stamp" our approval of an administrative interpretation. *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* at 575, 384 *A.*2d 795.

This is one of those comparatively rare cases in which we depart from an administrative agency's construction of a regulation. In our view, the Division has read *N.J.A.C.* 13:45A–9.1 far too expansively. By its very terms, the regulation pertains solely to those who "in the ordinary course of business [are]

engaged in the sale or rental of merchandise *at retail.*" (Emphasis supplied). The regulation is clearly confined to retailers. *Ibid.* It does not encompass manufacturers who merely seek to promote the retail sale of its products by unaffiliated dealers through advertising.

In our view, the Division's reliance on the statutory definitions of the terms "advertisement," "merchandise" and "sale" contained in *N.J.S.A.* 56:8–1(a), (c) and (e) is clearly misplaced. To be sure, these definitions include "direct" and "indirect" attempts to advertise and sell products. We have thus held that, by employing the "expansive term 'indirectly,'" the Legislature intended to abandon the common law concept of privity. *Perth Amboy Iron Works v. American Home,* 226 *N.J.Super.* 200, 210–211, 543 *A.*2d 1020 (1988), *aff'd,* 118 *N.J.* 249, 571 *A.*2d 294 (1990). We have therefore "interpret[ed] the Consumer Fraud Act to encompass the acts of remote suppliers ... whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer." *Id.* 226 *N.J.Super.* at 211, 543 *A.*2d 1020. Here, however, we are concerned with a specific regulatory provision whose contours and reach are expressly limited to "the sale or rental of merchandise *at retail.*" (Emphasis supplied). *N.J.A.C.* 13:45A–9.1. Obviously, the underscored phrase, "at retail," was employed for a reason. We are not at liberty to read that phrase out of the regulation. Rather, we are obliged to apply the regulation in a manner that comports with the plain meaning of the language employed.

Our interpretation of the regulation fully comports with the regulatory purpose. The Economic Impact Statement that accompanied the proposed regulation in 1985 stated:

> Consumers have gained the economic advantages of being able to compare, with reasonable assurance, the claims made in advertising. Time and expense are saved for consumers, who can largely avoid unnecessary trips seeking unavailable or misrepresented merchandise. The consumer also gains the economic advantage of being able to make meaningful and reasonably accurate advertising comparisons, based on standardized requirements for representing

the price, former price, comparative features and other qualities of the merchandise being offered for sale to the public. 17 *N.J.R.* 678–679 (1985).

Applying the regulation to a manufacturer who sells its products to independent retailers would serve none of these goals.

Significantly, the Division offers no suggestion with respect to how such a manufacturer would be able to comply with the terms of *N.J.A.C.* 13:45A–9.3(a)(3)i, ii, and iii. As we noted previously, this regulation requires the advertiser to include in a price reduction advertisement either its pre-sale selling price, the usual price of competitors in the trade area or the manufacturer's suggested retail price. *Ibid.*

In that context, the disclosure of the manufacturer's pre-sale selling price to independent retailers would not be particularly meaningful to the ultimate consumer. Indeed, automobile dealers are proscribed by regulation from "us[ing] [in any advertisement] ... comparison [of retail price] to the dealer's cost [or] inventory price," *see N.J.A.C.* 13:45A–2.7(a)10, because the manufacturer's sales price to dealers often fluctuates over time and is affected by "holdbacks" and "rebates." *See Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* at 71, 494 *A.*2d 804. The record does not reflect whether these commercial practices and customs exist in the electrical appliance industry, but there is a distinct possibility that disclosure of dealer cost would be counter-productive. Moreover, reductions in dealer cost are not always reflected in decreased retail prices. Dealer cost represents only one of numerous factors affecting the ultimate price to consumers.

In a similar vein, advertisements containing competitor manufacturers' prices to their retailers would not serve the interests of consumers. Assuming that such information is available, competitor manufacturers' selling prices to retailers would be subject to many of the same types of fluctuations and inaccuracies we have noted previously.

Finally, the record does not disclose whether or to what extent manufacturer's suggested retail prices are used in the

electrical appliance industry. It is undisputed, however, that General Electric does not utilize manufacturer's suggested retail prices. We note that the Federal Trade Commission has concluded that "the advertisement of a reduction [of a suggested retail price] may mislead the consumer." *Commercial Practices,* 16 *C.F.R.* § 233.3 (1990). As noted by the Commission, "[c]hanging competitive conditions have created more acute problems of deception than may have existed previously," because "[t]oday, only in the rare case are all sales of an article at the manufacturer's suggested retail or list price." *Ibid.* In any event, the extent to which a reduction in dealer cost impacts on suggested retail price is highly problematical and was not explored by the parties.

In short, the record does not suggest that application of *N.J.A.C.* 13:45A–9.3(a)(3)i, ii and iii to manufacturers would provide the purchasing consumer with a meaningful disclosure as to the actual retail price to be paid for the merchandise. Nor would the disclosures mandated by that regulation, if applied to manufacturers, establish a clear reference point for the purpose of comparing prices of retail competitors.

We are thus convinced that the Division erred in its finding that General Electric was bound by the provisions of *N.J.A.C.* 13:45A–9.3(a)(3)i, ii and iii. Accordingly, the action of the Division is reversed.