785 A.2d 37 (2001)
345 N.J.Super 314
Nancy DiVIGENZE and Michael DiVigenze, Plaintiffs-Respondents,
v.
CHRYSLER CORPORATION, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2001.
Decided November 21, 2001.
*38 *39 Kevin M. McKeon argued the cause for appellant, (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. McKeon, on the brief).
Thomas F. Klosinski argued the cause for respondents, (Power & Associates, attorneys; Michael Power, on the brief).
John J. Farmer, Jr., Attorney General, attorneys for amicus curiae New Jersey Division of Consumer Affairs, (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Susan Carboni, Deputy Attorney General, on the brief).[1]
Before Judges SKILLMAN, WECKER and LESEMANN.
The opinion of the court was delivered by WECKER, J.A.D.
After a jury verdict for plaintiffs, the trial judge announced that judgment would be entered against defendant, Chrysler Corporation, for the adjusted lease price of a 1997 Jeep Cherokee under the New Jersey Automobile Lemon Law, N.J.S.A. 56:12-29 to -49 (the Lemon Law). The judge denied defendant's motion for judgment notwithstanding the verdict or for a new trial.
Defendant's appeal raises an issue of first impression with respect to a consumer's right to seek a Lemon Law remedy in the Superior Court. The present statute, enacted in 1988, repealed and replaced the prior Lemon Law statute, N.J.S.A. 56:12-19 to -28, and provided for the first time for an administrative hearing procedure within the Division of Consumer Affairs. The novel issue before us arises out of an administrative regulation, N.J.A.C. 13:45A-26.5, which purports to require a consumer both to send the manufacturer a so-called "last chance" letter, and to establish that the claimed defect "continues to exist," as prerequisites to pursuing not only an administrative claim, as expressly required by the statute, but also as prerequisites to maintaining a Superior Court action under the Lemon Law. There is no dispute that plaintiffs did not send the last chance letter and that the defects were repaired one week before the complaint was filed. If the regulation as written governs Lemon Law claims brought in Superior Court, plaintiffs' claim fails as a matter of law, and we must reverse.
The statute itself expressly requires the consumer to meet the disputed requirements only in two circumstances: when a consumer seeks the statutory remedy in a summary administrative proceeding in the *40 Division of Consumer Affairs (the Division) pursuant to N.J.S.A. 56:12-37, or when a consumer who seeks relief in any one of the three dispute resolution forums recognized by the statute invokes an evidentiary presumption established by N.J.S.A. 56:12-33. But N.J.A.C. 13:45A-26.5 requires the consumer to meet both prerequisites in order "[t]o initiate a claim under the Lemon Law," including a claim filed in the Superior Court.
The question posed is whether the regulation falls within the scope of the authority delegated to the Division by the statute, or whether it is inconsistent with the statute and therefore outside the scope of its authority. We conclude that the regulation on its face is inconsistent with the statute insofar as it establishes prerequisites to filing a Lemon Law claim in the Superior Court. Accordingly, neither plaintiffs' failure to send defendant a "last chance" letter nor the fact that the nonconformities were eventually repaired bars this claim.
We also reject defendant's arguments with respect to several evidentiary rulings, the jury charge, and the weight of the evidence. We therefore affirm.
On May 3, 1997, plaintiffs Nancy and Michael DiVigenze[2] entered into a lease agreement with an authorized Chrysler dealer for a new 1997 Jeep Grand Cherokee.[3] Several warranty repairs were performed between May 1997 and February 1998 and are not the basis for plaintiff's Lemon Law claim.
Plaintiff testified that she first experienced severe shaking of the entire vehicle and almost lost control of the vehicle on the highway on January 3, 1998, while driving her mother to a doctor's appointment. After pulling off the road, turning off the engine, and then restarting it, plaintiff was able to continue her trip. She drove the vehicle to the dealer the same day, but the dealer's mechanic was unable to reproduce the condition in a test-drive, and there is no written record of that service visit. Plaintiff's mother testified and corroborated plaintiff's version of the incident.
On February 27, 1998, when the vehicle had traveled 14,723 miles, plaintiff again experienced severe shaking and vibration of the vehicle which impaired her control. Plaintiff brought the vehicle to the dealer and also reported an inoperable brake light. The dealer diagnosed a loose steering box and a chafed brake light wire.
The severe vibration occurred again. This time, the vehicle began to shake badly while plaintiff was negotiating a curve in the road. The brake light also failed again, and both conditions led plaintiff to return to the dealer on March 27, 1998. The dealer again replaced the steering box and ordered a new module for the brake light. The severe vibration in the car occurred again the same day.
Plaintiff returned to the dealer with the same two complaints on April 14. The dealer installed a new brake light module, but claimed to be unable to reproduce the vibration while test-driving the vehicle. Both conditions occurred again, and plaintiff returned to the dealer on May 21, 1998. This time the dealer found a leak in the steering damper and a short in the brake light wiring. Both defective parts were *41 replaced. Plaintiff testified that the vibration condition then improved substantially, from a "ten" on a scale of one to ten to a "one or two," although there were still intermittent incidents of vibration in the steering wheel. After the May 21 repairs, the vehicle itself no longer vibrated severely so as to threaten loss of control, and the brake light functioned properly.
This complaint against Chrysler Corporation[4] was filed on May 28, 1998, alleging substantial defects and nonconformities in the vehicle. The complaint included counts under the New Jersey Automobile Lemon Law, N.J.S.A. 56:12-29 to -49, the Magnuson Moss Warranty Act, 15 U.S.C.A. §§ 2301-2312, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -91, express warranties under the contract between the parties, and implied warranties of fitness and merchantability under the Uniform Commercial Code, N.J.S.A. 12A:2-313, -314, and -315.
At trial, plaintiff withdrew her consumer fraud claim and the court granted defendant's motion for judgment on plaintiff's implied warranty claims. The trial judge rejected defendant's arguments that plaintiff's failure to send a last chance letter and the fact that the defects were eventually repaired barred her Lemon Law claim. The judge denied defendant's motion for judgment dismissing plaintiff's Lemon Law and express warranty claims. Both parties agreed that if the jury found liability under the Lemon Law, the jury would be instructed not to consider the express warranty claim.[5] The judge also denied defendant's request to inform the jury of the amount that would be awarded in the event the jury found liability under the Lemon Law; however, the jury was informed that recovery under the Lemon Law would entitle plaintiff to return the vehicle, in which case the court would calculate the damage award to which plaintiff was entitled.
The judge accurately summarized the parties' contentions respecting the Lemon Law claim, telling the jury that it was plaintiff's contention that Chrysler failed to correct, within a reasonable time, defects which "substantially impair[ed] the vehicle's use, value or safety"; that such defects would constitute a nonconformity under the Lemon Law; and that defendant "asserts that any alleged problems with the vehicle have been corrected by it within a reasonable period of time. Additionally, that any alleged nonconformity does not substantially impair the use, value or safety of the vehicle."
In answer to four questions on the verdict sheet respecting plaintiff's Lemon Law claim, the jury determined that "plaintiff's vehicle had a nonconformity or nonconformities" that were "first reported to Chrysler ... within the plaintiff's first twenty-four months or 18,000 miles of use," that Chrysler "failed to repair... within a reasonable period of time," and that the vehicle's milage was 14,723 when first presented "for corrections of a nonconformity."
The judge calculated the statutory refund based upon plaintiff's total lease payments and related fees of $42,024.38, less a mileage offset of $5,296.01, and entered judgment for $36,728.37.[6] Plaintiff was *42 also awarded $8,751 in attorneys' fees and costs. Defendant moved for judgment notwithstanding the verdict or a new trial, arguing that plaintiff's Lemon Law claim failed because the defects had been repaired, and that plaintiff's failure to send a last chance letter barred her claim. The judge rejected those arguments, as well as defendant's arguments that the jury instructions were erroneous, that defendant's expert witness's testimony was unfairly limited, and that the verdict was against the weight of the evidence, and accordingly denied defendant's motions.

I.
In order to address the legal issues raised by defendant's reliance on the regulation, we begin by examining and comparing the Lemon Law statute with the regulation in issue, N.J.A.C. 45:13-26.5.
N.J.S.A. 56:12-29 sets forth the legislative findings that precipitated enactment of the Lemon Law, along with three expressed goals of the law:
The Legislature finds that the purchase of a new motor vehicle is a major, high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer. It is the intent of this act to require the manufacturer of a new motor vehicle to correct defects originally covered under the manufacturer's warranty which are identified and reported within a specified period. It is the further intent of this act to provide procedures to expeditiously resolve disputes between a consumer and a manufacturer when defects in a new motor vehicle are not corrected within a reasonable time, and to provide to award [sic] specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle.
The three-fold statutory intent is to require the manufacturer to make warranted repairs within a specific time frame, to establish expeditious dispute resolution procedures, and to provide remedies for the failure to repair substantial defects. To carry out those intentions, the statute imposes an affirmative obligation upon the manufacturer of a vehicle to repair substantial defects within a reasonable time:
If a consumer reports a nonconformity in a motor vehicle to the manufacturer or its dealer during the first 18,000 miles of operation or during the period of two years following the date of original delivery to a consumer, whichever is earlier, the manufacturer shall make, or arrange with its dealer to make, within a reasonable time, all repairs necessary to correct the nonconformity.

[N.J.S.A. 56:12-31 (emphasis added).]
A "nonconformity" is defined in the Lemon Law as "a defect or condition which substantially impairs the use, value or safety of a motor vehicle." N.J.S.A. 56:12-30.
If the manufacturer is "unable to repair or correct a nonconformity within a reasonable time," the manufacturer is obligated to "provide the consumer with a full refund of the purchase price ... including any [trade-in allowance and related costs and fees] less a reasonable allowance for vehicle use." N.J.S.A. 56:12-32a. Alternatively, the manufacturer may "offer to replace the vehicle in lieu of a refund" but the consumer may "reject a manufacturer's *43 offer of replacement and demand a refund." Ibid. Virtually the same remedies apply to a consumer who leases a new motor vehicle: refund of all payments and cancellation of the lease, less an allowance for reasonable use. N.J.S.A. 56:12-32b.[7]
The statute includes a rebuttable presumption that is available to a consumer under certain circumstances. "It is presumed that a manufacturer ... is unable to repair or correct a nonconformity within a reasonable time" if the nonconformity "continues to exist" after three repair attempts or after the vehicle is out of service for a cumulative total of twenty days. N.J.S.A. 56:12-33a. In other words, a consumer can meet her burden of producing evidence of the manufacturer's inability to repair within a reasonable time by producing evidence that the nonconformity "continues to exist" after the specified number of repairs or time out of service. But the presumption can apply against a manufacturer only if the plaintiff has given the manufacturer written notice of the consumer's Lemon Law claim by certified mail and has advised the manufacturer in that notice that it has one final opportunity to repair the defect within ten days. N.J.S.A. 56:12-33b. That written notice is known as the "last chance" letter.
The present Lemon Law statute recognizes three forums to "effectively resolve disputes between a consumer and a manufacturer when defects in a motor vehicle are not corrected within a reasonable time." Those forums are: (1) an informal dispute resolution procedure established by the manufacturer, N.J.S.A. 56:12-36; (2) a summary dispute resolution procedure established within the Division, N.J.S.A. 56:12-37, in what is now known as the Lemon Law Unit, N.J.A.C. 13:45A-26.4; and (3) a Superior Court action. N.J.S.A. 56:12-39. By providing an expeditious administrative forum in the Division to resolve consumer complaints under the Lemon Law, this statute effected a significant change from prior law.[8] The statute does not elaborate further on the substance or procedure applicable to a Superior Court action under the Lemon Law.
In creating an administrative forum for the first time, § 37 required the Division to provide for an expedited hearing on Lemon Law claims in the Office of Administrative Law and delegated authority to the Director of the Division to enact rules for handling such claims. One such enactment in 1988 was N.J.A.C. 13:45-26.5, which applies the § 33 last chance letter requirement to every consumer. In 1993, the Legislature amended § 37 to require any consumer seeking relief in the Division's Lemon Law Unit to send a last chance letter to the manufacturer as "a prerequisite to the filing of an application [in the Division]." N.J.S.A. 56:12-37a. There has been no similar amendment to N.J.S.A. 56:12-39, the statute's brief reference to a Superior Court action, or to N.J.S.A. 56:12-36, the statute's detailed prescription for a manufacturer's informal dispute resolution system. Thus under the statute, a last chance letter is required of a consumer only under two circumstances: when filing a Lemon Law claim in *44 the Division, or when invoking the statutory presumption in any forum.
Under the regulation, N.J.A.C. 13:45A-26.5, the last chance letter is a prerequisite to every consumer's Lemon Law claim, wherever filed, and irrespective of the consumer's reliance upon the § 33 presumption. N.J.A.C. 13:45A-26.5 provides:
(a) To initiate a claim under the Lemon Law, written notification of the potential claim must be sent certified mail, return receipt requested, by or on behalf of a consumer, to the manufacturer of a nonconforming motor vehicle if either of the following occurs during the first 18,000 miles of operation or within 24 months after the date of original delivery, whichever is earlier:
1. Substantially the same nonconformity has been subject to repair two or more times by the manufacturer or its dealer and the nonconformity continues to exist; or
2. The motor vehicle has been out of service by reason of repair for one or more nonconformities for a cumulative total of 20 or more days since the original delivery of the motor vehicle, and a nonconformity continues to exist.
(b) The manufacturer by law has one more opportunity to repair or correct the nonconformity within 10 days following receipt of notification from the consumer of a potential claim; if the nonconformity continues to exist after expiration of the 10 day time period and the manufacturer refuses to replace or refund the price of the vehicle, the criteria necessary to pursue a Lemon Law claim have been met. The consumer may then:
1. Refer the matter to the manufacturer for resolution through the manufacturer's informal dispute settlement procedure;
2. Refer the matter to the LLU for dispute resolution; or
3. File an action in the Superior Court....
In other words, the consumer may not seek relief in any of those three forums if she has not complied with sections (a) and (b) of the regulationthe same requirements for invoking the § 33 presumption.
The question posed by comparing N.J.A.C. 13:45A-26.5 with the Lemon Law statute is whether the regulation, by enacting these prerequisites to filing a claim in the Superior Court, exceeds the delegation of authority conferred by N.J.S.A. 56:12-37b and 56:12-49. In determining whether the regulation is within the statute's delegation of authority to the Division, it is appropriate to compare the consequences imposed by the statute with those imposed by the regulation when a consumer fails to satisfy the prerequisites for invoking the § 33 presumption.
Under § 33 of the statute, the consequences of a plaintiff's failure to send a last chance letter, or to prove that a defect continues to exist, are limited. That consumer cannot take advantage of the presumption. When the Legislature amended § 37 to incorporate the § 33 prerequisites, it extended the consequences of those failures, but only to bar the consumer's access to the Division's administrative forum, the Lemon Law Unit. The Legislature never extended those consequences to bar a consumer's access to the courts or to the manufacturer's dispute resolution system. The regulation alone did so, effectively turning the § 33 prerequisites for invoking a presumption into elements of the Lemon Law cause of action.
We are fully cognizant of the presumption of validity accorded to an administrative *45 agency's duly enacted regulations. "A strong presumption of reasonableness accompanies an administrative agency's exercise of statutorily delegated responsibility." Gloucester County Welfare Bd. v. State Civil Serv. Comm'n, 93 N.J. 384, 390, 461 A.2d 575 (1983); In re Route 206, 322 N.J.Super. 345, 352, 731 A.2d 56 (App.Div.), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999). We also recognize that a delegation of regulatory authority is to be construed liberally in furtherance of the statutory intent. Muise v. GPU, Inc., 332 N.J.Super. 140, 158, 753 A.2d 116 (App.Div.2000); Div. of Consumer Affairs v. Gen. Elec. Co., 244 N.J.Super. 349, 352-353, 582 A.2d 831 (App.Div.1990); In re Freshwater Wetlands Protection Act Rules, 238 N.J.Super. 516, 526, 570 A.2d 435 (App.Div.1989), which can be expressed or implied. James v. Bd. of Trs. of Pub. Employees' Ret. Sys., 164 N.J. 396, 404-05, 753 A.2d 1061 (2000); Barron v. State Health Benefits Comm'n, 343 N.J.Super. 583, 587, 779 A.2d 460 (App. Div.2001). The whole statute must be considered in interpreting particular sections, Fiore v. Consolidated Freightways, 140 N.J. 452, 466, 659 A.2d 436 (1995); Barron v. State Health Benefits Comm'n, supra, 343 N.J.Super. at 586-87, 779 A.2d 460, including a delegation of regulatory authority. New Jersey State League of Municipalities v. Dep't of Cmty. Affairs, 310 N.J.Super. 224, 233-34, 708 A.2d 708 (App. Div.1998), aff'd, 158 N.J. 211, 729 A.2d 21 (1999).
It is, however, a basic principle that the agency's power exists solely as granted by the Legislature. Chopper Express, Inc. v. Dep't of Ins., 293 N.J.Super. 536, 542, 681 A.2d 1226 (App.Div.1996); In re Adoption of Regulations Governing State Health Plan, 262 N.J.Super. 469, 478, 621 A.2d 484 (App.Div.1993), aff'd, 135 N.J. 24, 637 A.2d 1246 (1994). "[A]dministrative regulations which are inconsistent with delegated legislative powers must be deemed invalid." New Jersey Builders Ass'n. v. Fenske, 249 N.J.Super. 60, 68, 591 A.2d 1362 (App.Div.1991). "Administrative regulations cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in the statute," and "[w]hen the rule of an administrative agency contravenes the statute which created it, the rule lacks legal efficacy." Ibid. (citation omitted). Neither the presumption of validity nor the doctrine of liberal construction validates an exercise of authority beyond that which has been delegated by the enabling legislation. Knight v. City of Hoboken Rent Leveling & Stabilization Bd., 332 N.J.Super. 547, 551-52, 753 A.2d 1231 (App.Div.2000).
The expressed, general intent of the Lemon Law is to protect the new car consumer. See N.J.S.A. 56:12-29; Berrie v. Toyota Motor Sales, USA, Inc., 267 N.J.Super. 152, 155-56, 630 A.2d 1180 (App.Div.1993); Singer v. Land Rover N. Am., Inc., 955 F.Supp. 359, 363 (D.N.J. 1997). In enacting the new Lemon Law in 1988, creating an administrative forum for a Lemon Law complaint, the Legislature exhibited its specific intent to create a summary procedure in the Division and expressly delegated to the Division the authority to enact rules for that procedure.
Both the general and the specific intent of the statute are evident in the relationship between the § 33 presumption and the § 37 administrative dispute resolution system. Both protect the interest of the consumer. Section 33 eases the burden of establishing a prima facie case, and § 37 creates a summary procedure for obtaining the statutory remedy. As amended to require use of the presumption in the administrative forum, § 37 reduces the burden on the dispute resolution system by limiting the proofs and narrowing the *46 issues to be determined. When the Legislature amended § 37, it implicitly recognized the Division's authority to require the § 33 prerequisites for every claim brought in the Division. The Legislature gave no such recognition to the Division's extension of those prerequisites to a Superior Court action, an area outside the Division's expertise. Compare In re Amendment of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 543, 575 A.2d 481 (1990) ("[R]ecognition that certain subjects are within the peculiar competence of [an] agency" can warrant a finding of implied authority) (citing Bergen Pines Hosp. v. Dep't of Human Servs., 96 N.J. 456, 474, 476 A.2d 784 (1984)).
Defendant relies on the regulation to support its contention that plaintiff is barred from recovery under the Lemon Law not only for failing to send a last chance letter, but also because the nonconformities were repaired before she filed her Superior Court complaint. A rule that would bar recovery in Superior Court once the vehicle has been repaired would make court action impractical for many consumers. Such a rule would mean that a consumer who could not get satisfactory repair from the manufacturer within a reasonable time would be forced to stop all attempts at repair and to maintain a potentially unsafe or less than useful vehicle in that condition in order to preserve the right to bring a Lemon Law claim to trial. We deem it highly unlikely that the Legislature would have provided the lawsuit alternative if it intended to make the administrative hearing route the only practical one for every consumer.
We see no evidence that the Legislature intended to add a potential bar to suit in the Superior Court when it expressly amended the statute to add that same bar only for an administrative proceeding.[9] If the Legislature intended the regulation to govern all Lemon Law claims, including those brought in Superior Court, the 1993 amendment either was unnecessary, or logically should have included amendments to § 36 and § 39, governing manufacturer's dispute resolution and Superior Court actions, respectively. We find no evidence that the Legislature intended to delegate to the Division authority to change the law itself, and we conclude that those portions of the regulation that would bar a Superior Court action are inconsistent with the statute.
This conclusion is reinforced by the legislative history. When the present Lemon Law was enacted in 1988, the Senate Labor, Industry and Professions Committee expressed its intention that the Division enact "rules and procedures to provide the consumer with an effective, informal and expeditious alternative for resolving disputes...." Statement to S. No. 2201. After the Division enacted N.J.A.C. 13:45A-26.5, the Legislature amended N.J.S.A. 56:12-37 to add the § 33 last chance letter requirement as a precondition to pursuing relief in the Division. S. No. 608, L.1993, c. 21, § 4. The Statement of the Senate Law and Public Safety Committee to Senate No. 608 evidences the Legislature's intention to see that every Lemon Law case brought in the Division's Lemon Law Unit is a presumption case:
A final letter from the consumer to the manufacturer will be required as a precondition to initiating the Lemon Law process. The division has ruled that the letter of final notice and opportunity *47 to repair written by the consumer to the manufacturer is necessary prior to the Lemon Law unit accepting an application for review.[10] The division therefore requires the consumer to state in the application to the unit that he has given the manufacturer a final opportunity to repair and that the problem still exists. This step ensures that the statutory presumption in [N.J.S.A. 56:12-33] that the vehicle is a lemon is applicable in all Lemon Law cases handled by the division.

[Emphasis added.]
Our conclusion is further supported by the Division's present position. The Attorney General argues on behalf of the Division that the last chance letter and the continued existence of the defect are required only for a consumer who proceeds in the Division's Lemon Law Unit or who invokes the presumption in a court action. Although contrary to the literal terms of the regulation, the Division now expressly disavows an intention to impose those requirements upon a consumer's Lemon Law suit.
We give substantial, though not controlling deference to an agency's interpretation of the statute that it is charged with carrying out, as well as to the interpretation the agency itself gives to its own regulation. Muise v. GPU, Inc., supra, 332 N.J.Super. at 158, 753 A.2d 116; see also DiMaria v. Bd. of Trs. of the Pub. Employees' Ret. Sys., 225 N.J.Super. 341, 351, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988). We see no reason to disregard the Division's current position.
Defendant contends that if the regulation is not applied to a Superior Court action, there would be two bodies of law, one for the Lemon Law Unit and one for the Superior Court. We disagree. The substantive elements of the Lemon Law claim remain the same in either forum: a manufacturer's failure, within a reasonable time, to correct a warranted defect that substantially impairs the vehicle's use, value, or safety. In either forum the manufacturer has the opportunity to challenge each element of the consumer's claim.

II.
Turning to the evidence at trial, we are persuaded that plaintiff did not rely upon the § 33 presumption to establish defendant's failure to repair within a reasonable time. The § 33b presumption does not shift the burden of proof, and once contrary evidence is produced, the presumption has no further effect. Biunno, Current N.J. Rules of Evidence, comment 3 on N.J.R.E. 301 (2001). After plaintiff offered evidence of three unsuccessful repair attempts, defendant relied upon evidence of the fourth, successful repair on May 21, 1998. Defendant then argued that the period from the first vibration and brake light complaints to the May 21 repair was not an unreasonable time. If defendant had cited no evidence of successful repair within an arguably reasonable period, and if plaintiff had relied solely upon the first three unsuccessful attempts to establish defendant's inability to repair within a reasonable time, the jury would not have been asked, as it was, "Do you find that Chrysler Corp. or its authorized dealer(s) failed to repair the nonconformity or nonconformities within a reasonable period of time?" The evidentiary *48 presumption no longer applied, and it was up to the jury to decide whether the repairs were accomplished within a reasonable time. Since plaintiff did not rely upon the § 33 presumption, she was not required by that section of the statute to send the last chance letter or to establish that the defects continued to exist.

III.
Because we find that neither the lack of a last chance letter nor the eventual repairs bar plaintiff's lawsuit, we address defendant's arguments with respect to alleged errors in the conduct of the trial and in denying defendant's post-trial motions.
Defendant argues that the judge should have instructed the jury that if the defect "has been corrected ... then there is no Lemon Law violation," and that the judge erred in his instruction that:
[I]n order to qualify for Lemon Law relief the plaintiff need not demonstrate that the vehicle continues to suffer from a nonconformity at the present time, rather the test is whether the defendant corrected any reported nonconformity or nonconformities within a reasonable period of time.
That argument essentially repeats defendant's contention that plaintiff's case is barred because the defects have been repaired. Since we have rejected that contention, we need not repeat our reasons here. The essence of plaintiff's case is whether the repairs were completed within a reasonable time, and the jury answered that question in the negative.
We also reject defendant's contention that the judge failed to explain or guide the jury respecting the nature of the "substantial impairment" that plaintiff was required to prove.
The judge's charge to the jury was consistent with the Lemon Law:
[I]n order to establish a claim under the New Jersey Lemon Law the plaintiffs must establish by a preponderance or greater weight of the believable evidence that, (A) the plaintiff's vehicle had a nonconformity, (B) that such nonconformity or nonconformities were first reported to a dealer within the first two years or 18,000 miles of use after the date in which the plaintiff first took delivery of the vehicle whichever period is shorter, and, (C) that Daimler Chrysler or its authorized dealers did not make within a reasonable time all repairs necessary to correct the nonconformity or nonconformities.
What then is the definition of a nonconformity under the New Jersey Lemon Law Act? A nonconformity is defined as any defect or condition which substantially impairs the use, value or safety of the vehicle.
To substantially impair the defect or condition must impair the use, value or safety in an important, essential or significant way. It cannot be a minor, trivial or unimportant way.
The intent of the law is to require manufacturers to correct defects originally covered under manufacturers' warranties.
Now, in determining if a defect or condition substantially impairs the use or value of the automobile you can consider whether the defects or conditions have shaken the plaintiff's confidence in the automobile. If the plaintiff's confidence in the vehicle has been shaken this loss of confidence can be the basis for a finding that the vehicle's use or value has been substantiallyhas been substantially impaired.
But in making this determination I charge you that the standard is subjective or personal in the sense that the *49 facts must be examined in the view point of the buyer and her circumstances but they are also objective in the sense that the criteria is what a reasonable person in the buyer's position would have believed.
The mixed subjective/objective test, which allows the factfinder to consider a consumer's reasonably shaken confidence in the vehicle as a factor in determining substantial impairment, is a correct statement of the law. See Berrie v. Toyota, supra, 267 N.J.Super. at 157, 630 A.2d 1180.
While the judge refused defendant's request to tell the jury exactly how much plaintiff would recover, the judge effectively informed the jury of the extent of the remedy:
If the manufacturer or dealer is unable to correct a nonconformity within a reasonable time, the manufacturer shall accept return of the motor vehicle from the consumer.
And defense counsel argued without objection in his summation that plaintiff was asking the jury "to basically give her all her money back." The judge's instruction served essentially the purpose the defense argued for. It supplied the jury with an order of magnitude of the potential award in order to give sufficient content to an essential element of the cause of action: that the defect "substantially impairs" the value, use, or safety of the vehicle. We do not suggest that it would have been error to grant defendant's request, but only that under the circumstances it was not reversible error to deny the charge as requested. Compare Wanetick v. Gateway Mitsubishi, 163 N.J. 484, 750 A.2d 79 (2000) (ultimate outcome charge should generally be given in consumer fraud cases).
We also reject defendant's argument that the verdict was against the weight of the evidence. In support of its argument that it was error to deny its motion for a new trial, defendant contends that since plaintiff testified that the vibration was first reported in January, but the jury found that any nonconformity was first reported at 14,723 miles (the mileage in February when the brake light problem was first reported), the jury must have found only the brake light, and not the vibration, to be the substantial defect under the Lemon Law. Defendant argues, based on one reported case in the Division, that a brake light cannot, as a matter of law, constitute a Lemon Law nonconformity. Assuming (without deciding) that a defective brake light alone would not support a Lemon Law claim, we reject defendant's assertion that the jury verdict cannot stand.[11]
There was sufficient credible evidence that "reasonable minds might accept ... as adequate to support" the jury's conclusion that a nonconformity remained after attempted repairs in February, March, and April, and that the unrepaired defects continued for an unreasonable period of time. See Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969). The jury apparently believed plaintiff's testimony concerning the repeated, unrepaired problems with the vehicle. See Christelles v. Nissan Motor Corp., 305 N.J.Super. 222, 701 A.2d 1317 (App.Div.1997) (expert testimony is not required). There is no dispute that the vehicle's spontaneous and excessive vibration was diagnosed on May 21 as a *50 defective steering damper and repaired on that date, along with the malfunctioning brake light. Moreover, the testimony of defendant's expert automobile mechanic, Henry Gill, could be understood to support plaintiff's testimony that the vibration and loss of steering control that she experienced in February, March, April, and May (and perhaps in January as well) were caused by the defective damper problem that was diagnosed on May 21, 1998, and constituted a substantial impairment under the Lemon Law.
As plaintiff's attorney asked the jury rhetorically in his closing argument, "If you have a car that you cannot control on the road, is it reasonable to take from January 3rd to May to repair it, May 21st, is that reasonable? ... Is that reasonable to drive a vehicle from February until May without brake lights?" The jury was instructed to consider whether the manufacturer, through its authorized dealer, was unable to accomplish the repairs for an unreasonable period. The jury had to decide whether the defective conditions of the vehicle, namely the intermittent, severe vibration that affected control of the car, along with the malfunctioning brake light, continued for an unreasonable period of time without the manufacturer being able to repair, and if so whether those defects substantially impaired the value, use, or safety of the vehicle. The jury answered "yes" to both questions, and we are satisfied that there was sufficient credible evidence to support the jury's answers.
A trial court's ruling on a motion for a new trial alleging a jury verdict to be against the weight of the evidence "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; Dolson v. Anastasia, supra, 55 N.J. at 7-9, 258 A.2d 706. We are satisfied that there was no error of law that unfairly prejudiced the jury's verdict and no miscarriage of justice.
We find no merit in defendant's remaining arguments respecting plaintiff's testimony or the alleged limitations placed upon defendant's expert's testimony, none of which warrant discussion in this opinion. See R. 2:11-3(e)(1)(E).
We affirm.
NOTES
[1] After oral argument, when we learned that the Attorney General had not been notified of the pendency of this appeal, we offered the Attorney General the opportunity to submit a brief.
[2] Although both Nancy and Michael DiVigenze were named as lessees under the lease agreement, only Nancy DiVigenze testified at the trial. Unless otherwise indicated, we refer to plaintiff Nancy DiVigenze in the singular in this opinion.
[3] The statute imposes Lemon Law liability only upon the manufacturer for its own or its dealer's inability or failure to repair. N.J.S.A. 56:12-46.
[4] Defendant's brief refers to "DaimlerChrysler Corporation," but no formal amendment to the pleadings appears in the record before us.
[5] In light of our decision on the Lemon Law claim, we need not consider whether that instruction was appropriate.
[6] The statute provides that if, under certain conditions, "the manufacturer ... is unable to repair or correct a [substantial defect] within a reasonable time," the consumer shall be entitled to return the vehicle and receive "a full refund of the purchase price" or "the amount actually paid ... under the lease agreement, including any [related costs and fees], less a reasonable allowance for vehicle use." N.J.S.A. 56:12-32a and b.
[7] Whether the statute provides or permits any less drastic remedy under the Lemon Law is not at issue in this case.
[8] Under the repealed law, the Division's only role was to publish information about manufacturers' "qualified informal dispute resolution" procedures and their compliance with the Magnuson-Moss Warranty Act. N.J.S.A. 56:12-26 (repealed). Whereas consumer participation in such qualified procedures was a prerequisite to any remedy under the former law, N.J.S.A. 56:12-25 (repealed), it is not required under the present law. N.J.S.A. 56:12-39.
[9] While we find no bar to plaintiff's suit, we nevertheless assume that in most cases, as a matter of sound practice, it will behoove a consumer contemplating a potential Lemon Law claim to send the last chance letter and to allow the manufacturer a final opportunity to repair any nonconformity within ten days of receipt of that letter.
[10] Defendant's reliance upon those rulings is misplaced. By definition the Division's decisions arise solely out of cases brought in the Lemon Law Unit, and hold only that the regulation applies to proceedings in the Division. Those decisions have no precedential value on the issue before us: whether the letter is also required before going to court.
[11] We cannot know why the jury found that the nonconformity was first reported at 14,723 miles. Perhaps because there was no January repair record, or because the January mileage was not in evidence. Or the jury may have concluded that the combined defects, which required plaintiff to brake or pull over without a brake light to warn following drivers, together constituted the nonconformity.