630 A.2d 1180

ALEXANDRA P. BERRIE, PLAINTIFF–RESPONDENT, v. TOYOTA
MOTOR SALES, USA, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 28, 1993—Decided August 12, 1993.

Before Judges BRODY and HUMPHREYS.

*Robert E. Mensel* argued the cause for appellant (*Hanlon, Lavigne, Herzfeld & Rubin,* attorneys; *Lawrence N. Lavigne,* of counsel; *Mr. Mensel,* on the brief).

*Geoffrey D. Eberle* argued the cause for respondent Alexandra P. Berrie (*Gary D. Grant,* attorney; *Mr. Grant* and *Mr. Eberle,* on the brief).

*Alan C. Stephens,* Deputy Attorney General, argued the cause for respondent Division of Consumer Affairs (*Robert J. Del Tufo,* Attorney General, attorney; *Mr. Stephens,* on the brief).

The opinion of the court was delivered by

BURRELL IVES HUMPHREYS, A.J.S.C. (temporarily assigned).

The New Jersey Division of Consumer Affairs found after a hearing before an Administrative Law Judge that a 1991 Toyota Corolla was a "lemon". *See N.J.S.A.* 56:12–29 to –49. (the so called "Lemon Law" statute).

Toyota appeals contending that the wrong standard was applied and that the decision was "logically incoherent" and "contrary to the weight of the evidence." We disagree and affirm.

On April 4, 1991, plaintiff leased and took delivery of a 1991 Toyota Corolla. On November 19, 1991, her vehicle stalled and could not be restarted. It was towed to the dealer. Similar problems occurred in December 1991 and January 1992.

The stalling occurred when the car was parked in her driveway facing downward at an angle of approximately thirty degrees and the car had less than a half tank of gas.

Toyota's field technical administrator testified that if the fuel level of the tank is low enough and the grade is steep enough, then the problem may arise. He testified that this problem would not impair safety but did impair the car's use.

The Administrative Law Judge concluded that the manufacturer's fuel system had:

> a design defect which substantially impairs the use, safety and value of the vehicle to this consumer. Although respondent seeks to trivialize the importance of the problem by stating it operates within factory standards or represents it as normal, the evidence clearly shows that the failure to start not only interferes with the owner's enjoyment and use of her new car, but will affect its safety and value. Furthermore, the proofs amply demonstrate that the petitioner's response to the problem is not unduly demanding. Any reasonable person would be likely to act similarly. The problem is not one that every buyer must tolerate within the intendment of the Lemon Law.

The Director of the Division of Consumer Affairs adopted as her final decision the findings and conclusions of the Administrative Law Judge.

Toyota contends that to prove that a car is a lemon the consumer must establish a violation of a warranty. Toyota argues that the "manifest intention of the statute as a whole is to enforce the warranties, and these warranties, be they express or implied, do not reach every condition, defective or otherwise, which might impair a vehicle's use, value or safety, for any particular consumer."

The Legislature in enacting the Lemon Law made the following findings:

> The Legislature finds that the purchase of a new motor vehicle is a major, high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer. It is the intent of this act to require the manufacturer of a new motor vehicle to correct defects originally covered under the manufacturer's warranty which are identified and reported within a specified period. It is the further intent of this act to provide procedures to expeditiously resolve disputes between a consumer and a manufacturer when defects in a new motor vehicle are not corrected within a reasonable time, and to provide to award [sic] specific remedies where the uncorrected defect substantially impairs the use, value or safety of the new motor vehicle. [*N.J.S.A.* 56:12–29.]

Toyota contends that the above findings indicate a legislative intent to confine a consumer's rights to the maze of warranty law. *See G.M.A.C. v. Jankowitz*, 216 *N.J.Super.* 313, 324, 523 *A.2d* 695 (App.Div.1987), in which the court characterized a manufacturer's automobile warranty as "a masterpiece of ambiguity, inconsistency and contradictions."

▇ We disagree with such a restrictive interpretation. The Legislature in enacting the Lemon Law statute recognized that the purchase of an automobile is "a major high cost consumer transaction," and that "the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer." *Ibid.*

The "intent" of the Lemon Law is to "provide procedures to expeditiously resolve disputes between a consumer and a manufac-

turer when defects in a new motor vehicle are not corrected within a reasonable time," and to provide "specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle." *Ibid.*

Toyota's construction of the statute would turn this expeditious administrative proceeding into a full blown litigation entangling the consumer in the intricacies of design defects and other complexities of product liability law. The Legislature clearly intended to spare the unfortunate buyer of a "lemon" those hazards and costs.

The Legislature's concern for the consumer is further demonstrated by its creation of the following statutory presumption for the consumer.

a. It is presumed that a manufacturer or its dealer is unable to repair or correct a nonconformity within a reasonable time if, within the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date:

(1) Substantially the same nonconformity has been subject to repair three or more times by the manufacturer or its dealer and the nonconformity continues to exist; or

(2) The motor vehicle is out of service by reason of repair for one or more nonconformities for a cumulative total of 20 or more calendar days since the original delivery of the motor vehicle and a nonconformity continues to exist.

b. The presumption contained in subsection a. of this section shall apply against a manufacturer only if the manufacturer has received written notification, by or on behalf of the consumer, by certified mail return receipt requested, of a potential claim pursuant to the provisions of this act and has had one opportunity to repair or correct the defect or condition within 10 calendar days following receipt of the notification. Notification by the consumer shall take place any time after the motor vehicle has had substantially the same nonconformity subject to repair two or more times or has been out of service by reason of repair for a cumulative total of 20 or more calendar days.

c. The two-year term and the 20–day period specified in this section shall be extended by any period of time during which repair services are not available to the consumer because of a war, invasion or strike, or a fire, flood, or other natural disaster. [*N.J.S.A.* 56:12–33.]

 The consumer in this case presented her car to Toyota at least three times for repair of the nonconformity, but the nonconformity persisted. Consequently, the consumer is entitled to the

statutory presumption that Toyota is unable to repair or correct the nonconformity.

■ Toyota contends that the Division of Consumer Affairs improperly used a subjective standard, namely consumer satisfaction, and that an objective standard should be used in determining whether the defect or nonconformity substantially impairs the use, value or safety of the car. However, even under warranty law whether a defect or nonconformity substantially impairs the use or value of the goods to a buyer is not purely "objective." It may be "personalized in the sense that the facts must be examined from the viewpoint of the buyer and his circumstances, objective in the sense that the criterion is what a reasonable person in the buyer position would have believed." *G.M.A.C. v. Jankowitz,* 216 *N.J.Super.* 313, 335, 523 *A.*2d 695 (App.Div.1987) (quoting 67A *Am.Jur.2d Sales,* § 1203 (1985)).

■ An important factor is whether the nonconformity "shakes the buyer's confidence" in the goods. *Id.* at 338, 523 *A.*2d 695. The purchase of a new car is a major investment "rationalized by the peace of mind that flows from its dependability and safety." *Zabriskie Chevrolet, Inc. v. Smith,* 99 *N.J.Super.* 441, 458, 240 *A.*2d 195 (Law Div.1968). A reasonable person in plaintiff's position could readily conclude that a condition in which a car stalls and won't restart when parked on an incline impairs the use and value of the car and shakes her confidence in it.

The agency's decision is supported by substantial credible evidence, is consistent with legislative intent, and is clearly not arbitrary, capricious or unreasonable. It must therefore be sustained. *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980); *Campbell v. Department of Civil Service,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

Affirmed.