701 A.2d 1317

CAROL CHRISTELLES, PETITIONER–APPELLANT, v.
NISSAN MOTOR CORP., U.S.A., RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1997—Decided November 7, 1997.

Before Judges SHEBELL [1], D'ANNUNZIO and COBURN.

*Michael E. Coslit* argued the cause for appellant (*Fitzsimmons, Ringle & Jacobs*, attorneys; *Michele Schreier*, of counsel and on the brief).

*Thomas J. Sateary* argued the cause for respondent Nissan Motor Corporation in U.S.A. (*Cooper, Rose & English*, attorneys; *Mr. Sateary*, on the brief).

*Carmen A. Rodriguez*, Deputy Attorney General, argued the cause for respondent State of New Jersey, Division of Consumer Affairs (*Peter Verniero*, Attorney General, attorney; *Andrea M. Silkowitz*, Assistant Attorney General, of counsel; *Ms. Rodriguez*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

The lessee of a Nissan automobile appeals from a final decision of the Director of the Division of Consumer Affairs (Division),

---

[1] Judge Shebell was added to this case after oral argument and participates with the parties' consent.

rejecting appellant's claim under New Jersey's "Lemon Law" (Act). *N.J.S.A.* 56:12–29 to –46. We now reverse and remand.

The claimant, Carol Christelles, and her expert witness, Gary Quick, testified in the proceedings before an Administrative Law Judge (ALJ). Christelles testified that she took delivery of the Nissan from the dealer, Warnock, on July 18, 1995. On October 6, 1995, when the vehicle had 2,019 miles on it, Christelles was driving it between 55 and 60 miles per hour on Interstate Route 78 when the vehicle began to buck, all the panel lights came on, and the vehicle stalled. She was able to restart the vehicle and continue her journey. The vehicle stalled on several occasions for the remainder of her trip to downtown Newark, and from there it was towed to Warnock. Warnock had the vehicle from October 6 to October 27 and attempted to repair it. On November 2, 1995, five days later, Christelles was driving to her sister's house in Hillside when she experienced bucking and stalling. Again, all the panel lights came on. The vehicle was again towed to Warnock where a repair was attempted. Christelles retrieved her vehicle on November 8.

On November 13, 1995, while she was travelling on Interstate 78, the vehicle bucked and then stalled. She was able to restart it after fifteen minutes and drive the vehicle. It stalled again, followed by another restart, followed by another stall and restart. The vehicle was towed to Warnock.

The vehicle stalled on February 23, 1996, and on February 24, 1996, Christelles wrote her "last chance" letter to Nissan. *N.J.S.A.* 56:12–33b. She had received no response by March 1, 1996 when the vehicle stalled again. The car was taken to Warnock and a Nissan representative told her that they were not able to duplicate the problem. Christelles testified that it stalled on June 4 and was in Warnock's service center from June 11 to June 24. She also testified that it stalled on July 13, 1996. The hearing before the ALJ was on September 4, 1996 and, at that time, the mileage was 12,800.

Christelles further testified that the problem occurred in wet and rainy weather and that Warnock finally had told her that it was not going to touch the car because it could not duplicate the problem. Andrew Christelles, Carol's husband, testified, corroborating some of the events described by Carol.

Gary Quick qualified as an expert in automotive repair and computer diagnosis. Christelles had retained him four or five days before the hearing. Quick testified that weather is a primary problem with electronic systems in modern-day vehicles. According to Quick, damp moist days can have an adverse effect on electronics because moist air can get into a circuit if it has not been sealed properly, thereby causing the circuit to malfunction. In addition to a defective weather seal on a connector, other possible causes of a stalling problem are inadequate grounding or a defective connection. A transmission problem can also cause the stalling phenomenon. According to Quick, diagnosis of these problems is often very difficult. Quick ultimately opined that the cause of the stalling was an electrical problem due to a poor ground or a faulty connection which will manifest itself on wet and damp days. Quick stated that the actual location of the problem may be impossible to find. Quick had been unable to duplicate the problem or to diagnose it more specifically.

Carlos Ferreira was Nissan's sole witness. He is employed by Nissan as a dealer technical specialist, and he assists dealers in the diagnosis and repair of difficult to repair vehicles. He provides the dealers with technical information. Ferreira drove the Christelles' vehicle twice because the dealership asked him for help. He could not duplicate the condition, and a computer diagnosis of the car's electronic system resulted in no positive findings. He agreed, however, that the computer would not detect mechanical failures. At one point in his testimony, he appeared to assume that there was, in fact, a problem and testified that he could not say with one hundred percent assurance that it was an electrical problem. However, he finally testified that because he

was not able to duplicate the problem, he was satisfied that there is no problem.

On cross-examination, he admitted that he had experience with stalling vehicles where the cause of the problem was not detected by the computerized diagnosis. He also conceded that it is possible for a circuit to open temporarily and then close, in which event the computer would not detect a problem.

In a written initial decision, the ALJ rejected Christelles' claim and the Director of the Division adopted the ALJ's initial decision as his final decision.

The ALJ, after summarizing the evidence and testimony, made the following determinations:

The New Jersey lemon Law, *N.J.S.A.* 56:12–29, *et seq.*, provides relief for a consumer who purchases a vehicle with a nonconformity that a dealer or manufacturer is unable to correct within the time limits required by the statute. A "nonconformity" defined by *N.J.S.A.* 56:12–30 is "a defect or condition which substantially impairs the use, value or safety of a motor vehicle." The New Jersey Supreme Court has held in *Herbstman v. Eastman Kodak Co.,* 68 *N.J.* 1, 9, 342 *A.*2d 181 (1975) that the determination of a substantial impairment must be based upon an objective factual evaluation rather than upon a subjective test of whether the consumer believed that there was a substantial impairment.

In this case, there is a dispute as to whether or not the vehicle has a defect or condition which substantially impairs its use, value or safety. Mrs. Christelles claims that the vehicle has such a defect or condition and Nissan claims that it does not. In order to resolve this dispute, the objective factual evidence presented by the experts in this case must be relied upon, not the subjective evidence presented by Mrs. Christelles and her husband.

Mr. Quick has no idea of what, if any, defects exist in the vehicle. He never thoroughly examined it. He did, however, scan and drive the vehicle and he found no defects. His opinion that the vehicle has an electrical defect clearly is speculative. Mr. Ferreira, on the other hand, examined the vehicle, he tested different systems in it, he drove it and he used a very reliable Nissan computer that detects any defects, including past, intermittent defects. Mr. Ferreira found that no defects exist in the vehicle.

Based upon the foregoing, I CONCLUDE that Mrs. Christelles has not demonstrated by a preponderance of the credible evidence that the vehicle contains a nonconformity within the meaning of *N.J.S.A.* 56:12–30. I further CONCLUDE that Mrs. Christelles is entitled to no relief under the New Jersey Lemon Law, *N.J.S.A.* 56:12–29 *et seq.*

The Act establishes substantive and procedural remedies for a purchaser or lessee of a motor vehicle which contains a "noncon-

formity." *See generally Berrie v. Toyota,* 267 *N.J.Super.* 152, 630 *A.*2d 1180 (App.Div.1993). *N.J.S.A.* 56:12–30 defines a nonconformity as "a defect or condition which substantially impairs the use, value or safety of a motor vehicle." The manufacturer of a vehicle is required to repair or arrange for the repair of the nonconformity if the consumer reports it during the first 18,000 miles of operation or within two years of the date of original delivery, whichever is earlier. *N.J.S.A.* 56:12–31. "If ... the manufacturer or its dealer is unable to repair or correct a nonconformity within a reasonable time, the manufacturer shall accept return of the motor vehicle from the consumer." *N.J.S.A.* 56:12–32a. In that event the manufacturer must refund the purchase price, and other relevant expenses, "less a reasonable allowance for vehicle use." *Ibid.* The Act provides similar remedies to a lessee of a motor vehicle. *N.J.S.A.* 56:12–32b. The Act establishes a presumption that a manufacturer "is unable to repair or correct a nonconformity within a reasonable time" on the occurrence of certain events. *N.J.S.A.* 56:12–33. Those events occurred in this case.

The threshold issue is whether the Nissan had a defect, *i.e.,* whether the stalling and bucking difficulties described by Christelles occurred. Resolution of that issue requires an assessment of Christelles' credibility and the credibility of her husband, Andrew. If the credibility issue is resolved in favor of Christelles, then the issue is whether the defect described by them constitutes a "nonconformity" as defined in *N.J.S.A.* 56:12–30.

We cannot determine from the decision whether the ALJ made a credibility determination regarding the Christelles' testimony. It appears that the ALJ ruled that there can be no finding of a defect in the absence of expert testimony establishing its cause. In this regard, we refer to the ALJ's statement, in reliance on *Herbstman v. Eastman Kodak Co.,* 68 *N.J.* 1, 9, 342 *A.*2d 181 (1975), "that the determination of a substantial impairment must be based upon an objective factual evaluation rather than upon a subjective test of whether the consumer believed that there was a

substantial impairment." The ALJ said that "the objective factual evidence presented by the experts in this case must be relied upon, not the subjective evidence presented by Mrs. Christelles and her husband." The ALJ determined that since neither expert could diagnose the cause of the alleged defect, the defect did not exist.

Initially we note that *Herbstman* did not involve the lemon law or even a motor vehicle; it involved a camera. The defect in the camera was an accepted fact. Therefore, the language the ALJ relied on had nothing to do with whether a defect existed. The issue in *Herbstman* was whether the defect was substantial enough to require the manufacturer to refund the purchase price or whether the manufacturer's duty was limited to effecting a repair of the camera. The issue in *Herbstman*, therefore, was equivalent to the second issue in a lemon law claim; whether the defect constitutes a nonconformity. The Supreme Court held that the purchaser's remedy in the circumstances of that case was limited to the repair of the defect. *Herbstman, supra,* 68 *N.J.* at 13, 342 *A.*2d 181. Thus, the ALJ's citation of *Herbstman* has led to confusion regarding her decision. Did the ALJ decide that a stalling problem existed, but because it could not be diagnosed it was not a "nonconformity"? Or did the ALJ decide that the stalling problem did not occur?

■ We are also concerned about the characterization of the Christelles' testimony as "subjective" evidence. If the Christelles are determined to have been credible, then their testimony established objective facts, the bucking and stalling of their vehicle on the specified dates. While their testimony may not have been of a technical nature, it was not subjective. *Cf. Mason v. Porsche Cars of North America, Inc.,* 688 *So.*2d 361, 367 (Fla. 5th DCA 1997) (in the context of Florida's Warranty Act, which addresses product "malfunctions" analogous to the lemon law's "nonconformities," finding that "in light of the technological complexity of most automobiles ..., forcing consumers to identify the cause, rather than the effect, of a defect would be unrealistically burdensome to

the very persons" such legislation "was meant to aid."); *Jandreau v. LaVigne,* 170 *A.D.*2d 861, 566 *N.Y.S.*2d 683, 685 (1991) (noting that buyers of an automobile were not required to produce expert testimony to establish warranted defects under the used car lemon law).

■ The ALJ's statement that "Mr. Quick has no idea of what, if any, defects exist in the vehicle," is not supported in the evidence. Quick explained how weather can affect the electronics system in today's automobiles. He narrowed the cause to a poor ground or temporarily incomplete circuit due to moisture.

■ The decision suggests that in the absence of corroborating expert testimony, the testimony of the owner/lessee cannot sustain a claim. Alternatively, it suggests that in the absence of expert testimony establishing a cause of the alleged problem, the claim will not be sustained even if the ALJ finds the claimant's testimony to be credible. We are persuaded that the absence of corroborating expert testimony is not fatal to a claim, though such testimony may be relevant regarding the credibility of the owner/lessee's allegations and other issues.

The instant situation closely resembles that in *Ventura v. Ford Motor Corp.,* 180 *N.J.Super.* 45, 433 *A.*2d 801 (App.Div.1981), which arose in a breach of warranty context. According to the testimony of plaintiff Ventura and his wife, they experienced engine hesitation and stalling problems soon after purchasing a new car from their dealership, Marino Auto. *Id.* at 53, 433 *A.*2d 801. These problems persisted despite repeated attempts by Marino Auto to correct them. *Ibid.* Ford, the manufacturer of the car, had a zone service manager inspect the vehicle; plaintiff testified that this manager told him that there was nothing wrong with the car and that he would " 'have to live with this one.' " *Ibid.* In finding that Ford breached its express warranty and that the car was substantially impaired, we held that "inferences from the evidence," without supporting expert proof, could support a conclusion that a defective mechanism for which the auto manufacturer was responsible caused plaintiff's engine to stall. *Ibid. See*

*also Scanlon v. General Motors Corp.*, 65 *N.J.* 582, 592–93, 326 *A.*2d 673 (1974) (indicating that the newness and prior usage of a product may lead to the inference that a defect existed prior to sale); *G.M.A.C. v. Jankowitz*, 216 *N.J.Super.* 313, 336, 523 *A.*2d 695 (App.Div.1987) (stating that "in a breach of warranty action, plaintiff need not establish the existence of a defect; the failure of the Cadillac to perform as warranted is sufficient."); *Mason v. Porsche Cars, Inc., supra*, 688 *So.*2d at 367; *Jandreau v. LaVigne, supra*, 566 *N.Y.S.*2d at 685.

The Act requires a manufacturer to accept return of the vehicle if the manufacturer is "unable" to repair the vehicle. *N.J.S.A.* 56:12–32a. This language includes those instances in which the manufacturer has not been able to establish the cause of the defect.

To recapitulate, the first issue is whether the defect described by the Christelles exists. Resolution of this issue requires a determination of the credibility of Mr. and Mrs. Christelles. In resolving the credibility issue, expert testimony is relevant, but not necessarily dispositive. If it is determined that the defect exists, the next issue is whether the defect qualifies as a "nonconformity" under the Act. *See Berrie v. Toyota, supra*, 267 *N.J.Super.* at 157, 630 *A.*2d 1180. If so, then the claimant is entitled to the Act's remedies.

The agency's final decision is reversed and the matter is remanded for a new hearing. Because the ALJ who decided this claim has expressed an opinion regarding its resolution, we are persuaded that the appearance of objectivity will best be preserved by assignment of the hearing on remand to a different ALJ. We do not retain jurisdiction.