NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4487-12T3

JORGE CASAL,

    Plaintiff-Appellant,

v.

HYUNDAI MOTOR AMERICA,

    Defendant-Respondent.

_____

> APPROVED FOR PUBLICATION
>
> July 2, 2014
>
> APPELLATE DIVISION

Argued April 29, 2014 — Decided July 2, 2014

Before Judges Reisner[1], Alvarez and Higbee.

On appeal from the Superior Court of New
Jersey, Law Division, Middlesex County,
Docket No. L-0468-12.

Andrew R. Wolf argued the cause for
appellant (The Wolf Law Firm LLC, attorneys;
Mr. Wolf and Aaron Mizrahi, of counsel and
on the briefs; Andrew W. Li and Christopher
J. McGinn, on the briefs).

Jane A. Rigby argued the cause for
respondent (McElroy, Deutsch, Mulvaney &
Carpenter, LLP, attorneys; Ms. Rigby and
Stephen F. Payerle, of counsel and on the
brief).

    The opinion of the court was delivered by

HIGBEE, J.S.C. (temporarily assigned).

_____

[1] Judge Reisner did not participate in oral argument, but joins
in the opinion with the consent of counsel.  See R. 2:13-2(b).

Plaintiff Jorge Casal (Casal) and defendant Hyundai Motor America (HMA) entered into a settlement agreement concerning an action seeking relief under N.J.S.A. 56:12-32(a)(1) (Lemon Law). Pursuant to the settlement agreement, the issue of the appropriate counsel fee award under N.J.S.A. 56:12-42 was submitted to the court. The trial judge found that a substantial portion of counsel's time was expended in obtaining relief from the cost to Casal of optional vehicle protection contracts that Casal purchased through the dealer from third party vendors. For that reason, the court denied relief, concluding that the statute did not include the cost or transfer of these contracts.

We find the Lemon Law does extend this protection to the consumer. Hence, we reverse and remand for reconsideration of the attorney fee award.

Casal purchased a new Hyundai Santa Fe from Sansone Hyundai, Inc. (Sansone), a dealer for HMA. Casal financed his purchase, including the cost of the optional protection packages, through a loan arranged by Sansone with non-party Hyundai Capital America.

As set forth in the trial court's memorandum of decision:

> At the time of purchase, Casal also entered into several contracts for various "protections." One contract was with non-party NSD, which provided benefits for three

years after the purchase against any losses suffered as a result of the failure of the Theft Detection System in the car. The Theft Detection System was an etching of an identifying mark in the car's window.

A second agreement was with non-party Nation Motor Club Inc., [an affiliate of NSD] which provided benefits for five years after the date of purchase for the replacement cost of any key or remote device that is lost, stolen or destroyed.

Plaintiff entered into a third agreement, also with non-party NSD, for its Titanium Protection Plan, which included roadside assistance, windshield repair protection, tire and rim protection, and dent and ding protection.

Lastly, Casal entered into a contract through Sansone, as the dealer and authorized representative of the lienholder Hyundai Capital America, in which the lienholder agreed to waive any gap in the difference between actual cash value of the vehicle and the loan balance in the event of a total loss of the vehicle.

The parties agreed that the car met the criteria of the statute as a "lemon." Except for attorney fees, the only substantial dispute which remained was the resolution of these optional third party contracts. The trial judge found HMA had, in fact, offered to settle before the complaint was filed, but the liability for the optional third party contracts was still in dispute. He stated:

Thus, a threshold inquiry is whether the offers of settlement by HMA, either in providing a replacement vehicle or refund,

A-4487-12T3

without including a refund for these non-party contracts, is violative of the statute. If it is not consistent with the statute, then the plaintiff has every right to insist on asserting his full rights thereunder. If, on the other hand, the statute does not require such a payment, then it is unreasonable to initiate litigation solely to seek that redress.

We agree that is a threshold issue, but we find the statute does provide this relief to the consumer. N.J.S.A. 56:12-32(a)(1),(3) reads as follows:

> a. If, during the period specified in section 3 [C.56:12-31] of this act, the manufacturer . . . or its dealer or distributor, is unable to repair or correct the nonconformity within a reasonable time, the manufacturer . . . shall accept return of the motor vehicle from the consumer.

> (1) In the case of a motor vehicle . . . the manufacturer shall provide the consumer with a full refund of the purchase price of the original motor vehicle including any stated credit or allowance for the consumer's used motor vehicle, the cost of any options or other modifications arranged, installed, or made by the manufacturer or its dealer within 30 days after the date of original delivery, and any other charges or fees including, but not limited to, sales tax, license and registration fees, finance charges, reimbursement for towing and reimbursement for actual expenses incurred by the consumer for the rental of a motor vehicle equivalent to the consumer's motor vehicle and limited to the period during which the consumer's motor vehicle was out of service due to

the nonconformity, less a reasonable allowance for vehicle use.

. . . .

(3) Nothing in this subsection shall be construed to preclude a manufacturer . . . from making an offer to replace the vehicle in lieu of a refund; except that the consumer may, in any case, reject an offer of replacement and demand a refund . . . . In the event that the consumer accepts an offer to replace the motor vehicle in lieu of a refund, it shall be the manufacturer's . . . responsibility to insure that any lien on the returned motor vehicle is transferred to the replacement vehicle.

Casal purchased his vehicle on June 10, 2011. The problem with the car started two days later. By mid-July the car met the criteria for a refund or exchange under the Lemon Law. Casal sent three letters to HMA explaining he believed his car was a lemon; HMA did not respond until Casal obtained an attorney, thus precipitating the need for counsel fees.

HMA first offered Casal $3,000.00 plus car rental expenses after he hired counsel. The offer was declined and immediately thereafter, on September 16, 2011, HMA offered to replace the vehicle. The dispute over the scope of the statutory language became the focus of the parties.

Casal wanted the dealer to transfer his protection plan agreements to the new vehicle at no additional cost to him. HMA's response was "HMA cannot make any guarantees as to the

cost of the transfers of these plans as this is a matter between Mr. Casal and the dealership."

Although the manufacturer is the entity responsible to the consumer under the Lemon Law, the first release sent to Casal with the HMA settlement offer included language releasing HMA and the Hyundai dealer Sansone. Casal had paid approximately $3,000.00 for the protection plans purchased through Sansone and added into the finance agreement with Hyundai Capital Inc., the lienholder, even though they were with the third party vendor.

HMA later offered Casal a refund instead of a replacement vehicle, but still denied any responsibility for the cancellation of the optional contracts. Since the trial judge found that legal work performed after this offer by Casal's counsel was for relief not included in the Lemon Law, he decided counsel fees were not allowable for work performed after this offer to settle.

HMA argues that all Casal had to do was cancel the protection plans and he would receive reimbursement from the third party vendors. However, it was not as easy as HMA suggested. The actual process and difficulty in getting these protection plans cancelled and transferred from the old car to the new car is reflected in counsel's certification and attached billing records submitted in support of the application for fees.

A-4487-12T3

At first Casal agreed to handle the transfers himself. His attorney's billing record dated December 12, 2011 states that when he "[s]poke to client [he] explained the replacement offer and his obligation to work with the dealership and loan company to initiate the transfers. Also mentioned the process should be simple, no cost and without hassle."

Three months later Casal's attorney noted in his billing record that "[Casal] told [him] that he is getting the runaround; transferred to multiple extensions, no responding to e-mails he left; being told certain plans not cancellable." At that point, counsel believed his client could not accomplish the transfers himself and counsel proceeded to handle the problem. Shortly thereafter, the complaint under the Lemon Law was filed against HMA.

According to counsel's certification in support of his fee application, he received little assistance, in fact, some resistance, from the dealer. He directly contacted the third-party vendors about the policies and was told the cancellations had to come from the dealer. In May, plaintiff's counsel was still working on assuring the refunds were paid to the lienholder on these contracts.

HMA's position is that it is not a party to these contracts between vendors and Casal and, therefore, cannot cancel them or

be held responsible under the statute.  However, HMA acknowledges that reimbursement for the contracts occurred after they put pressure on their dealer.

The trial judge agreed with HMA that they had no responsibility for these contracts, and interpreted the statutory language to refer only to physical alterations or additions made to the vehicle.[2]  He further found that the statutory language requiring reimbursement for "any other charges or fees including, but not limited to, sales tax, license and registration fees, finance charges" did not include the third-party contracts because they were not "direct costs imposed on the transaction."

The expressed intent of the Lemon Law is to protect the new car consumer.  See DiVigenze v. Chrysler Corp., 345 N.J. Super. 314, 322-23 (App. Div. 2001), certif. denied, 171 N.J. 442 (2002); Berrie v. Toyota Motor Sales USA, Inc., 267 N.J. Super. 152, 155-56 (App. Div. 1993).

N.J.S.A. 56:12-29 states:

> The Legislature finds that the purchase of a new motor vehicle is a major high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic

---

[2] N.J.S.A. 56:12-32(a)(1) states that "the cost of any options or other modifications arranged, installed, or made by the manufacturer or its dealer . . . ."

> burden on the consumer . . . . It is the
> further intent of this act to provide
> procedures to expeditiously resolve disputes
> between a consumer and a manufacturer.

It is clear that the Act should be interpreted liberally since the expressed general intent of the Lemon Law is to protect the new car consumer.  See N.J.S.A. 56:12-29; see also Berrie, supra, 267 N.J. Super. at 155-56.  The language of the statute in no way excludes optional contracts arranged by the dealer.  There are no words in the statute that suggest that "options or other modifications arranged" by the dealer are limited to physical changes to the vehicle.

The statute lists additional charges such as fees for state taxes, registration costs or finance charges.  These are all costs from third parties, not a party to the contract, but the Lemon Law requires reimbursement for them by the manufacturer. Although these items are listed in the statute, it also says that reimbursement is not limited to these items.  It is clear from the statute that the consumer is to be made whole for all costs associated with the purchase as long as they are arranged by the dealer.

HMA has argued that there really is no cost at all from these third party contracts since they can be cancelled and reimbursements can be obtained.  We disagree.

A-4487-12T3

HMA imposed the duty of negotiating with these third parties, the dealer, and the finance company on Casal, and as a result he had to incur counsel fees.  The dealer has an ongoing business relationship with the manufacturer.  The third parties involved have ongoing business relationships with the dealer, and all of these contracts were offered as part of the sale of the vehicle.  All were negotiated by the manufacturer's dealer with the consumer, albeit on behalf of a third party.

HMA may have needed Casal to sign requests for cancellations of the contracts, just as they needed him to sign registration forms and transfers of title, but there is no question that HMA could have handled these transactions in a shorter time than the consumer and his attorney were required to expend.

We hold the Lemon Law requires the consumer to be made whole and authorizes a counsel fee award, if counsel is needed to obtain relief from any options sold through the dealer, as part of the purchase transaction.  The Legislature specifically stated the purpose of the statute is to resolve these disputes expeditiously.  N.J.S.A. 56:12-29.  A consumer should be able to resolve his claim with the manufacturer without counsel fees, but where counsel is needed, the consumer is entitled to an award of reasonable counsel fees to obtain full relief under the

statute.  We, therefore, reverse and remand the matter to the court for reconsideration of the appropriate counsel fees.

> **[At the direction of the court, per <u>R.</u> 1:36-2(a), the discussion of the other issues in the appeal has been omitted from the published opinion.]**

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                          A-4487-12T3