**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1580-24

JILL STEELE,

    Plaintiff-Appellant,

v.

AMERICAN HONDA
MOTOR CO., INC.,

    Defendant-Respondent.

_____

Submitted December 16, 2025 – Decided January 15, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0470-23.

Kimmel & Silverman, PC, attorneys for appellant (Jason L. Greshes and Jacqueline Herritt, on the brief).

Greenbaum Rowe Smith & Davis LLP, attorneys for respondent (C. Brian Kornbrek and Thomas K. Murphy III, of counsel and on the brief).

PER CURIAM

Plaintiff Jill Steele appeals from a January 27, 2025 order granting summary judgment in favor of defendant American Honda Motor Co., Inc. (Honda) dismissing her two-count complaint asserting claims under the New Jersey Motor Vehicle Warranty Act (the Lemon Law), N.J.S.A. 56:12-29 to -49, and the Magnuson-Moss Federal Trade Commission Improvement Act (the "Magnuson-Moss Act"), 15 U.S.C.A. §§ 2301 to 2312.  We affirm.

I.

We summarize the facts supported by "competent evidential materials" in the record viewed in the light most favorable to plaintiff, the non-moving party.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  On July 17, 2021, plaintiff purchased a 2021 Honda Pilot from Honda of Princeton for $54,068.96.  The vehicle included a limited express warranty that provided for the first three years or 36,000 miles, whichever first occurs, "Honda will repair or replace any part that is defective in material or workmanship under normal use" (the Warranty).

On April 11, 2022, plaintiff brought the vehicle to Hamilton Honda reporting several issues, one of which was that she "found water on the floor." The service invoice states:  "Technician found water leak behind front passenger side kick panel, applied body sealer and tested again with running water and no

2

leak [was] found." When plaintiff returned for the vehicle, she noticed the "car [was] drenched, soaking wet," and she "walked right back in," and "they kept it for another, like, four days." When the vehicle was returned to her "it was still wet." "The next day, [she] was at work" and "[she] had all [her] doors open all day with all [her] mats and stuff out on the ground."

On March 10, 2023, plaintiff filed her complaint in this case alleging "defects and[/]or non[]conformities to the following vehicle components: radio; water leak; brake system[;] and transmission . . . which substantially impair its use, value[,] and/or safety." Despite having not returned to any Honda dealer for any reason since April 2022, she alleged "the vehicle ha[d] been subject to repair more than three . . . times for the same [n]onconformity, and the [n]onconformity remained uncorrected."

On June 14, 2023, plaintiff had the vehicle inspected by her expert, Robert Ruch. In a report dated December 2, 2023, he determined there was "[n]o current water leaking in the interior," but he saw "signs th[e] vehicle was exposed to significant water in the vehicle interior in the past." Specifically, he saw "items [such] as paper warped and peeling off the inside glass." He noted "[t]he interior still has a[n] odd old mildew odor [and] when turning on the HVAC it is more pronounced."

A-1580-24

At his deposition, Ruch testified the carpet "was not wet when [he] pulled the mats out" for his inspection. With respect to the odor in the vehicle, he testified:

> [Defense counsel]: And did you confirm an abnormal smell?
>
> [Ruch]: When the AC was on, [he] could smell, like, a mildew smell. Yes. But only when it was on recirculate.
>
>  . . . .
>
> [Defense counsel]: If you turned off the recirculate mode, did it go away?
>
> [Ruch]: Yes.
>
> [Defense counsel]: And how strong would you say the smell was?
>
> [Ruch]: Noticeable but not overwhelming.

Based on plaintiff's representation that "she returned [to Honda] several times" to repair the water leak, Ruch concluded "the use of th[e] vehicle would be impaired by the number of times [the vehicle went] back to the dealer and days in the shop seeking repair for the water leak warranty non[]conformities." He opined the vehicle was in "[f]air/[r]ough" condition and was worth $26,200 but would have been worth $29,600 if it was in "[e]xcellent/[c]lean" condition.

A-1580-24

On August 8, 2024, after driving the vehicle 48,214 miles and more than three years after it was purchased, plaintiff returned it to Hamilton Honda reporting several repair issues including that the "vehicle gets foggy on the inside and moldy." This was the first time she returned to a Honda dealership making any complaint about the vehicle since April 2022. The dealer advised plaintiff:

> No water leaks. Water tested the vehicle[.] [D]id not find any water leaks[.] [H]owever noticed someone already checked for water leaks because there is a seal on the right front roof molding. The car get[s] foggy because there probably [is] some left over water in the carpet and the heat is steaming up the car. Also[,] the moldy smell is gone. However[,] if you still think it smell[s] . . . moldy then you need a whole new carpet.

On December 4, 2024, after driving the vehicle 52,246 miles, plaintiff returned the vehicle to Hamiton Honda for an oil change and other repairs, none of which related to the April 2022 water leak. That same day, the dealership advised plaintiff "the technician did not have any mold smell." On December 5, the vehicle was returned to plaintiff.

After the completion of discovery, defendant moved for summary judgment. On January 17, 2025, Judge Douglas H. Hurd conducted oral argument. On January 27, 2025, he entered an order granting defendant's motion supported by an oral opinion.

A-1580-24

The judge found "the first time that a dealer attempted to address a leak complaint was on April 11[], 2022" and it "was a single repair that took a total of five days." He concluded, "[t]here was nothing that was not properly . . . repaired and there is no evidence that the alleged condition continues to exist." The judge noted "it is also not disputed that plaintiff did not return to any Honda dealer over the next [twenty-eight] months for any reason whatsoever." As a result, "the Lemon Law period and the [W]arranty both expired in this period when plaintiff sought no relief or remedy from Honda."

The judge noted "after her lawsuit was filed[,] . . . [plaintiff] eventually returned . . . on August 8, 2024, that was over three years after her purchase of the vehicle[,] and it was at 48,214 miles." She "complained of a '[moldy] smell,' . . . [b]ut . . . there[ was] no evidence of any water leak after the repair to the vehicle in April 2022." The judge found "plaintiff's own expert . . . inspected the vehicle" and did not find "any active leak."

The judge concluded "plaintiff's complaints do not rise to the level of a substantial impairment" and "[t]he repair history simply does not support the existence of a substantial impairment." The judge also found "[p]laintiff's claim fails because [her] expert admits th[e] leak was repaired" and "has no basis for

6

his opinion regarding the smell . . . and . . . does not know what is causing the smell."  This appeal followed.

On appeal, plaintiff argues the judge improperly granted summary judgment because "there was substantial evidence of [defendant's] failure to repair a defect or condition that substantially impaired the safety, value[,] or use of the vehicle with a reasonable amount of time."  She also contends the court incorrectly granted summary judgment because "material facts remain as to whether the vehicle was unfit for ordinary purposes and whether [defendant] failed to honor express and implied warranties."

II.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo.  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  We apply the same standard as the trial court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill, 142 N.J. at 540.

"By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where [a] party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact

challenged.'" Id. at 529 (emphasis omitted). Insubstantial arguments based on assumptions or speculation are not enough to overcome a motion for summary judgment. Ibid.

Based on our de novo review, we are convinced summary judgment was appropriately granted and affirm substantially for the reasons set forth in Judge Hurd's oral opinion. We add the following comments.

The Lemon Law requires new vehicle manufacturers "to correct defects originally covered under warranty which are identified and reported within a specified period[,]" and provides "procedures to expeditiously resolve disputes" between consumers and manufacturers when reported defects "are not corrected within a reasonable time," by providing "specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle." N.J.S.A. 56:12-29.

The Lemon Law "imposes an affirmative obligation upon the manufacturer of a vehicle to repair substantial defects within a reasonable time." DiVigenze v. Chrysler Corp., 345 N.J. Super. 314, 323 (App. Div. 2001). It provides:

> If a consumer reports a nonconformity in a motor vehicle to the manufacturer . . . or its dealer or distributor, during the first 24,000 miles of operation or during the period of two years following the date of

original delivery to the consumer, whichever is earlier, the manufacturer, . . . shall make, or arrange with its dealer or distributor to make, within a reasonable time, all repairs necessary to correct the nonconformity.

[N.J.S.A. 56:12-31.]

Following the report of a nonconformity to the manufacturer, "[t]he manufacturer then has three attempts or a cumulative total of 20 calendar days, whichever occurs first, to repair the nonconforming vehicle." Thiedemann v. Mercedes–Benz USA, LLC, 183 N.J. 234, 254 (2005) (citing N.J.S.A. 56:12-33). A consumer meets this burden "by producing evidence that the nonconformity 'continues to exist' after the specified number of repairs or time out of service." DiVigenze, 345 N.J. Super. at 324 (quoting N.J.S.A. 56:12-33b).

The mere existence of a defect in a vehicle is insufficient to establish a claim under the Lemon Law. A "nonconformity" is "a defect or condition which substantially impairs the use, value or safety of a motor vehicle." N.J.S.A. 56:12-30.

Whether an alleged defect causes substantial impairment depends on both subjective and objective evidence. Berrie v. Toyota Motor Sales, USA, Inc., 267 N.J. Super. 152, 157 (App. Div. 1993). "[T]he facts must be examined from the viewpoint of the buyer and [their] circumstances," while bearing in mind

9

"what a reasonable person in the buyer's position would have believed." Gen. Motors Acceptance Corp. v. Jankowitz, 216 N.J. Super. 313, 335 (App. Div. 1987) (quoting 67A Am. Jur. 2d Sales § 1203 (1985)). "An important factor is whether the nonconformity 'shakes the buyer's confidence' in the goods." Berrie, 267 N.J. Super. at 157 (quoting Jankowitz, 216 N.J. Super. at 338).

As the judge correctly determined, the water leak plaintiff reported in April 2022, was fixed on the first attempt. The vehicle was returned to plaintiff within several days. Over a year later, in June 2023, plaintiff's expert inspected the vehicle and confirmed there was no active water leak. He "saw signs th[e] vehicle was exposed to significant water in the vehicle interior in the past," but the carpet and floor mats were not wet at the time of his inspection. Plaintiff did not return the vehicle to any Honda dealer for any reason until August 8, 2024.

Plaintiff's expert further opined that the odor plaintiff reported was only noticeable when the air condition was set to recirculate. Moreover, the odor was "not overwhelming." Indeed, plaintiff drove the vehicle more than 48,000 miles before she returned to Hamilton Honda complaining about the odor in August 2024.

A-1580-24

There is no competent evidence in the record to support plaintiff's claim that the alleged odor shook her confidence in the vehicle or that it substantially impaired the use, value, or safety of the vehicle. We are satisfied the judge correctly determined plaintiff failed to present evidence sufficient to permit a rational trier of fact to find a substantial impairment to the vehicle or that Honda failed to repair the water leak within a reasonable time as required by the Lemon Law.

We are also convinced the judge properly dismissed plaintiff's breach of warranty claims. The Magnuson-Moss Act operates to ensure the enforceability of consumer warranties. Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 59 (App. Div. 1981).

To sustain a claim of breach of warranty or a violation of the Magnuson-Moss Act, a plaintiff must show:

> (i) the item at issue was subject to [an express or implied] warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of [repair] attempts.
>
> [Temple v. Fleetwood Enters., Inc., 133 Fed. Appx. 254, 268 (6th Cir. 2005); see also Poli v. DaimlerChrysler Corp., 349 N.J. Super. 169, 171 (App. Div. 2002) (finding that a warranty claim under the Magnuson-Moss Act requires the seller to fail to

11

perform the required repair within a reasonable period of time).]

As the judge correctly found, the water leak plaintiff reported in April 2022 was repaired on the first attempt, and plaintiff never returned to Honda for additional repairs during the effective period of the Warranty. Her own expert conceded the water leak was repaired and there was no active leak more than a year later when he inspected the vehicle in June 2023. There is no evidence to support plaintiff's claim that defendant breached an express warranty. The judge properly granted defendant's motion for summary judgment on plaintiff's breach of express warranty claim.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, including her argument that the vehicle was not fit for ordinary use in violation of the implied warranty of merchantability, N.J.S.A. 12A:2-314(2), it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1580-24