**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2517-17T1

BJ AMERICA ELECTRIC, LLC,

     Plaintiff-Appellant,

v.

BMW NORTH AMERICA, LLC,

     Defendant-Respondent,

and

PARK AVENUE BMW,

     Defendant.

_____

Argued December 18, 2018 – Decided May 8, 2019

Before Judges Rothstadt, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-10063-14.

Michael S. Kimm argued the cause for appellant (Kimm Law Firm, attorneys; Michael S. Kimm, on the briefs).

Thomas J. Sateary argued the cause for respondent (Lindabury, McCormick, Estabrook & Cooper, PC,

attorneys; Thomas J. Sateary and Steven A. Andreacchi,
of counsel and on the brief; Sergio D. Simoes, on the
brief).

PER CURIAM

Plaintiff BJ America Electric, LLC appeals from the Law Division's January 30, 2018 order dismissing its claims against defendant BMW North America, LLC under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and for breach of warranty regarding a vehicle plaintiff leased. Plaintiff also challenges a May 12, 2017 order dismissing its claim to revoke the purchase of the vehicle under the Uniform Commercial Code (UCC), N.J.S.A. 12A:2-608; an October 18, 2017 order compelling discovery of a portion of plaintiff's tax returns; and a December 18, 2017 order granting partial summary judgment and dismissing plaintiff's claims for violation of the Lemon Law, N.J.S.A. 56:12-29.[1]

According to plaintiff, the trial court erred by awarding defendant summary judgment as to plaintiff's Lemon Law claim because there were material issues of fact in dispute. It also contends that the court's granting of defendant's motions in

---

[1] Plaintiff's notice of appeal only identified the January 30, 2018 order dismissing its claims for violation of the CFA and breach of warranty. However, its brief on appeal raises issues as to the earlier orders, which both parties have fully briefed without any objection. For that reason, "we have elected pursuant to [Rule] 2:6-2 to address each of [plaintiff's] contentions[.]" Capaccio v. Capaccio, 321 N.J. Super. 46, 51 n.8 (App. Div. 1999).

limine that resulted in the dismissal of its remaining claims was "erroneous." Plaintiff also argues that the order dismissing its claim under the UCC was incorrect and that it should not have not been compelled to disclose its tax returns in discovery. For the reasons that follow, we affirm in part and reverse and remand in part.

I.

Although this matter has a convoluted history, the basic facts are not complicated and are generally undisputed. Plaintiff is a limited liability company engaged in the electronics business. In 2013, plaintiff leased a BMW 650 motor vehicle through defendant Park Avenue BMW (Park Avenue), which was an authorized BMW dealer.[2] Plaintiff's principal, Hyeon Cho, executed a lease on plaintiff's behalf with Park Avenue and guaranteed performance of the lease. In the lease, the parties acknowledged that the lease would be assigned to BMW Financial Services NA, LLC (BMWFS), which was not a party to this action.

The lease also stated that the vehicle's "Primary Use" would be for "Personal, Family or Household" purposes. Nevertheless, Cho acknowledged that although he used the vehicle for personal matters, he also "d[id] a lot of things for the company using" it. Plaintiff made the required lease payments from a bank account in its name, which Cho described as also being his "personal bank account."

---

[2] Plaintiff settled its claims against Park Avenue before the scheduled trial date.

The vehicle was covered by a New Vehicle Limited Warranty. The warranty covered "defects in materials or workmanship," but did not cover damage resulting from "negligence, improper operation of the vehicle, improper repair, [or] lack of or improper maintenance" or from "[f]ailure to maintain the vehicle properly in accordance with the instructions in the Owner's Manual . . . that results in the failure of any part of the vehicle." It also excluded tires. However, plaintiff purchased a three-year tire and wheel protection service plan.

Between March 2013 and August 2014, plaintiff brought the automobile to Park Avenue for service on numerous occasions. Ultimately, in August 2014, plaintiff abandoned the vehicle there when Cho determined that it was not being adequately repaired. Plaintiff paid the lease payments for the next four months, but then ceased making payments. The vehicle was then repossessed by BMWFS and sold at an auction. Following the sale, plaintiff had a deficiency balance due under the lease of over $13,000. Due to various credits, that amount was reduced to just over $6000. Plaintiff did not pay the balance owed.

In October 2014, plaintiff filed its complaint and in 2017 filed an amended complaint. The amended complaint asserted four causes of action: (1) violations of the Lemon Law; (2) violation of the CFA; (3) breach of warranty; and (4) revocation of acceptance under the UCC.

4

On March 19, 2017, Park Avenue filed a motion in lieu of an answer under Rule 4:6-2 seeking the dismissal of plaintiff's claims under the Lemon Law and the UCC. On May 12, 2017, the trial court granted Park Avenue's motion as to the UCC, but not the Lemon Law. The court dismissed the UCC claim as to all defendants because it found that the UCC did not apply to plaintiff's claim as it arose from a lease, rather than a purchase.

On October 18, 2017, the trial court ordered plaintiff to respond to defendant's discovery demands by producing a portion of Cho's tax returns for the years 2012 through 2014 reflecting any deductions made for the vehicle. Those tax returns demonstrated that Cho claimed that the vehicle was used for exclusively commercial purposes and that he deducted the expenses associated with the vehicle as business expenses.

On November 8, 2017, defendant filed a motion for summary judgment, seeking to dismiss the amended complaint, which plaintiff opposed. On December 18, 2017, the court granted defendant's motion and dismissed with prejudice plaintiff's Lemon Law claim. The court found that because the vehicle was registered and leased by plaintiff, "an entity," used in part for "commercial purposes" and "business," and Cho's "tax records indicate[d] that the vehicle was used for business . . . and deductions were taken," there was no genuine issue as to any

material fact that the vehicle was used primarily for commercial rather than personal purposes, and therefore was not covered by the Lemon Law. The court denied defendant's motion as to plaintiff's remaining claims.

The case was scheduled for trial on January 29, 2018. On January 23, 2018, plaintiff submitted several motions in limine. Plaintiff sought (1) an adverse inference charge of spoliation due to defendant's alleged intentional spoliation of internal emails; (2) preclusion of the testimony of defendant's corporate representative; (3) preclusion of defendant's expert's testimony due to his failure to create his own report; (4) exclusion of documents and facts demonstrating a separation between defendant and its independent leasing company; (5) exclusion of an assertion by defendant that plaintiff leased the vehicle from the leasing company and not defendant; and (6) preclusion of the argument that plaintiff used substandard gasoline.

Defendant also submitted motions in limine. In its motions, defendant sought to bar (1) "testimony regarding [defendant's] response (or lack thereof) to [p]laintiff's . . . demand for repurchase" made under the Lemon Law, or testimony by plaintiff about its counsel's communications with defendant's attorneys regarding those demands; (2) evidence about "[c]onsequential [d]amages [that were] [s]ubstantively [b]arred" by the vehicle's warranty and otherwise unsupported by any

evidence in discovery; (3) evidence of the vehicle's alleged diminished value, which was unsupported by any expert opinions; (4) evidence of actions taken by BMWFS, a non-party; and (5) evidence of tire issues that were expressly excluded from warranty coverage.

After considering the parties' arguments a day earlier, on January 30, 2018, the trial court placed on the record its oral decision as to its granting of defendant's motions. It found that a violation of the Lemon Law could not support a CFA claim that defendant committed an "unconscionable business practice," and even if it did, the Lemon Law claim had already been dismissed. The court also rejected any claim relating to tires as they were not covered by the New Vehicle Warranty. It enforced the warranty's exclusions regarding incidental and consequential damages and breach of any express or implied warranties. The court also rejected plaintiff's claims for consequential damages, including unspecified damages relating to alleged harm to Cho's credit score and business and to his mental stress caused by the vehicle's repossession. The court explained that Cho was not a party to the action and any claimed injury to his interests was not the result of any actions by defendant. It also found that defendant had nothing to do with the vehicle's repossession that was conducted by BMWFS, "a separate corporate entity not a party to this action."

A-2517-17T1

Finally, the court denied plaintiff's claim for diminished value damages pursuant to breach of warranty, noting that plaintiff had no expert to establish the difference between the vehicle's lease price and its value at the time of repossession. Plaintiff bore the burden of objectively proving that loss and the court found its calculation of the loss to be unsupported, especially because plaintiff had no expert report about the defects that caused the vehicle's decline in value, if any. It concluded that any award of damages on the sole remaining claim would be speculative, which warranted its dismissal.

Addressing plaintiff's contention that "defendant improperly br[ought] these applications to the [c]ourt masquerading as in limine motions when in fact they are summary judgment applications," the court found that

> the issues presented are issues of law which required resolution before the matter was put to the trier of the fact. The Court finds that it has discretion in the interest of justice, judicial economy and to avoid unnecessary expense to the litigants to decide the in limine applications prior to trial. The Court would of course prefer to have such motions submitted well in advance to permit adequate time [for] consideration and to permit the litigants to avoid the expense of trial litigation.

The court entered an order on January 30, 2018 memorializing its decision to dismiss plaintiff's action. This appeal followed.

II.

On appeal, plaintiff makes four arguments, contending that it was an error to (1) grant summary judgment and dismiss the Lemon Law claims; (2) grant defendant's in limine motions and dismiss plaintiff's claims for violations of the CFA and breach of warranty; (3) dismiss its UCC revocation of acceptance claim; and (4) grant defendant's motion to compel a portion of plaintiff's tax returns.

A.

We begin our review by addressing plaintiff's contention that its Lemon Law claim against defendant was improperly dismissed on summary judgment. Plaintiff argues that its dismissal was in error because contrary to defendant's contention, the vehicle was used for personal rather than commercial purposes and therefore the Lemon Law applied.

We review a trial court's decision granting summary judgment de novo, applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard requires a court to grant summary judgment when, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a

judgment or order as a matter of law." R. 4:46-2; Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)). In our review, we do not afford any special deference to the trial court's interpretation of the law and the legal consequences that flow from the facts. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010); see also Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Whether summary judgment was appropriate here turned on whether there existed any material issue of fact as to plaintiff's vehicle being covered by the Lemon Law. The Lemon Law, premised on the Legislature's finding that "the purchase of a new motor vehicle is a major, high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer[,]" N.J.S.A. 56:12-29, is designed to ease a consumer's efforts to obtain rectification of defects. See DiVigenze v. Chrysler Corp., 345 N.J. Super. 314, 323 (App. Div. 2001) (describing manufacturer's obligation to rectify). The law provides a remedy to consumers who purchase a defective "motor vehicle" that a manufacturer or car dealer does not correct "within a reasonable time." N.J.S.A. 56:12-31. If a claim is made under the Lemon Law for a "nonconformity" within the statutory period and the manufacturer or dealer does not make the necessary correction, "the manufacturer shall provide the consumer

with a full refund of the purchase price." N.J.S.A. 56:12-32. A "nonconformity" is "a defect or condition which substantially impairs the use, value or safety of a motor vehicle." N.J.S.A. 56:12-30.

A "motor vehicle" is defined by the Lemon Law in part as a "passenger automobile . . . as defined in [N.J.S.A.] 39:1-1," New Jersey's Traffic Laws. Ibid. A "passenger automobile" under the Traffic Laws is one "used and designed for the transportation of passengers, other than omnibuses and school buses." N.J.S.A. 39:1-1. By contrast, a "commercial motor vehicle," which is not covered by the Lemon Law, "includes every type of motor-driven vehicle used for commercial purposes on the highways, such as the transportation of goods, wares and merchandise[.]" Ibid. A passenger vehicle under the Lemon Law, therefore, is distinguished from a commercial vehicle by virtue of the vehicle's actual use.

Here, then, the viability of plaintiff's claim under the Lemon Law could only be determined by how plaintiff used the vehicle. The evidence on the summary judgment motion regarding its use consisted of Cho identifying in the lease that the vehicle's principal use would be "[p]ersonal, [f]amily or [h]ousehold," even though plaintiff leased the vehicle through a program for small businesses. Cho also declared in his 2013 and 2014 tax returns that it was used for business when he deducted one hundred percent of the payments made toward the vehicle as a business

expense. His tax returns confirmed that all of the mileage on the vehicle was dedicated to business purposes, the vehicle was not available for personal use during off-duty hours, and he had another vehicle available for personal use.

In his certification filed in opposition to summary judgment, Cho explained that despite the contents of the documents he signed, he actually used the vehicle to commute to work and occasionally to drive to job sites to visit clients. He also explained that plaintiff's equipment consists of "electrical cables and light fixtures [which] are voluminous, heavy, often sharp, jagged and messy," which he would not transport in a luxury vehicle. He stated that plaintiff "had [three] other vehicles including two industrial trucks for these job-related purposes."

We conclude that plaintiff, through Cho's certification, satisfied its burden to establish that there remained genuine issues of material fact about plaintiff's use of the automobile. See Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009) (addressing opponent of motion's burden on summary judgment); accord Brae Asset Fund, LP v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999). The facts stated by Cho were at least equally probative of the vehicle's actual use as were the tax returns and other documents that the trial court relied upon.

Applying the Lemon Law's definitions of use to the evidence on summary judgment, it was error for the trial court to determine that Cho's treatment of the

vehicle for tax purposes established that the vehicle was excluded from the Lemon Law's protections. The lease agreement stated that the vehicle was intended for primarily personal use and, other than the tax documents, there was no evidence that contradicted Cho's certification that the vehicle was primarily used for personal purposes. While plaintiff's tax returns were probative of the vehicle's use, and could be used as evidence or for impeachment purposes, they alone could not be relied upon to determine the applicability of the Lemon Law here. We therefore reverse that determination and remand for a trial as to that claim.

B.

Because the tax returns were clearly probative of plaintiff's use of the vehicle, we find plaintiff's argument that it should not have been compelled to turn over the returns in discovery to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, the need to discover evidence about plaintiff's use of the vehicle provided the "good cause" needed for the information to be disclosed in discovery. Ullmann v. Hartford Fire Ins. Co., 87 N.J. Super. 409, 414 (App. Div. 1965); see also De Graaff v. De Graaff, 163 N.J. Super. 578, 582 (App. Div. 1978).

13

## C.

We turn next to plaintiff's argument about the trial court's Rule 4:6-2 dismissal of its UCC claim. Plaintiff asserts that its UCC revocation of acceptance claim should not have been dismissed for failure to state a claim because it was "validly asserted" and the elements of the claim had been satisfied "on the facial challenge." We disagree.

We "review[] de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e). [In our review, we] owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, __ N.J. __, __ (2019) (slip op. at 22) (citations omitted). We are required to "examine[] 'the legal sufficiency of the facts alleged on the face of the complaint,' [and] limit[ our] review to 'the pleadings themselves[.]'" Ibid. (first quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989); and then quoting Roa v. Roa, 200 N.J. 555, 562 (2010)). "'At this preliminary stage of the litigation [we are] not concerned with the ability of plaintiffs to prove the allegation contained in the complaint,' and the plaintiff is 'entitled to every reasonable inference of fact.'" Ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746).

Applying that standard, we conclude that the trial court correctly determined that plaintiff's UCC claim did not present a viable claim against defendant. Under

the UCC, a buyer may revoke acceptance of goods where a "non-conformity substantially impairs its value" if the goods were accepted either (1) "on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured" or (2) "without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.J.S.A. 12A:2-608. Revocation of acceptance must occur within a reasonable time and is tantamount to rejection. Ibid.

In cases involving the sale of an automobile, revocation "is limited to cases in which the purchaser makes his complaint directly against the seller." Edelstein v. Toyota Motors Distribs., 176 N.J. Super. 57, 64 (App. Div. 1980) (reversing a trial court's grant of default judgment against the defendant manufacturer because the plaintiff had not presented proof that he had a contractual agreement with the manufacturer, nor that the dealership was the manufacturer's agent). An action for revocation may be asserted directly against the manufacturer only "if the seller is the agent of the manufacturer in the sale of the product." Ibid. Here, as to defendant, the vehicle's manufacturer, no viable claim of revocation existed as a matter of law because there was no allegation or proof that Park Avenue was defendant's agent.

D.

Last, we address plaintiff's contentions that the trial court improperly dismissed in limine its remaining claims under the CFA and for breach of warranty. Plaintiff contends that BMW's motions in limine were actually last-minute motions for summary judgment, which are improper under our holding in Seoung Ouk Cho v. Trinitas Regional Medical Center, 443 N.J. Super. 461 (App. Div. 2015). Plaintiff specifically argues that the dismissal of its CFA claim was improper because it satisfied the CFA's requirement for proof of an unconscionable business practice and ascertainable loss through evidence of the deficiency balance BMWFS sought to recover after the vehicle's auction and defendant allowing BMWFS to seek the deficiency balance from plaintiff and "dodg[ing] the Lemon Law application." Plaintiff also argues that defendant failed to honor its duty to repair the vehicle under the warranty. We find no merit to these contentions.

A motion in limine is "a pretrial request that certain inadmissible evidence not be referred to or offered at trial." Cho, 443 N.J. Super. at 470. It is well-established that in limine motions that are summary judgment motions in disguise have been repeatedly condemned. "Our court rules simply do not countenance the practice of filing dispositive motions on the eve of or at the time of trial." L.C. v. M.A.J., 451 N.J. Super. 408, 411 (App. Div. 2017); see also Cho, 443 N.J. Super at 470-74.

"When granting a motion will result in the dismissal of a plaintiff's case . . . the motion is subject to <u>Rule</u> 4:46, the rule that governs summary judgment motions." <u>Cho</u>, 443 N.J. Super. at 471. The motion must comply with all of the timelines applicable to summary judgment motions. <u>Ibid.</u>

A motion in limine filed on the eve of trial "is permissible only when it addresses preliminary or evidentiary issues." <u>L.C.</u>, 451 N.J. Super. at 411. Even in that instance, those applications are disfavored and should be heard only sparingly. <u>Ibid.</u> (citations omitted).

Defendant's motions in limine did not seek the dismissal of any of plaintiff's claims. <u>Compare</u> <u>Cho</u>, 443 N.J. Super. at 468 (addressing the defendant's motion in limine seeking to dismiss because "proofs of economic loss were too speculative" and certain claims were never pled). Rather, they sought to preclude the admission of evidence that was inadmissible or irrelevant to those claims based upon earlier trial court decisions or plaintiff having failed to provide certain evidence during discovery and defendant not wanting to be surprised by its sudden production at trial. For example, defendant's motions sought in part the barring of expert testimony because no experts were identified and no reports were produced, as compared to plaintiff's motion in limine which sought to bar defendant's disclosed expert's testimony because the expert's report "was not based on the expert's own analysis

and opinion as to the vehicle and its issues." Here, although defendant did not seek dismissal of any viable claim, the result of the court's rulings on defendant's in limine motions necessarily led to the unsolicited result of dismissal of those claims.

First, plaintiff's CFA claims were properly dismissed because plaintiff could not produce sufficient evidence to satisfy its burden to establish an unconscionable practice or an ascertainable loss as required by the CFA.[3] The CFA was enacted to "provide[] relief to consumers from 'fraudulent practices in the marketplace.'" Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017) (quoting Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 521 (2010)) (alteration in original). It "is a powerful 'legislative broadside against unsavory commercial practices' in the marketplace." All Way Towing, LLC v. Bucks Cty. Int'l, Inc., 236 N.J. 431, 434 (2019) (quoting Radir

---

[3] To the extent plaintiff argues that its CFA claim should not have been dismissed because its Lemon Law claim was not viable, we agree. "The CFA is not the only remedy available to automobile consumers. There is also the New Jersey Lemon Law Act[.]" Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 254 (2005). The failure of a party's Lemon Law claim alone does not require the dismissal of its valid CFA claim. The remedies under each act are distinct and are intended to supplement each other. See Real v. Radir Wheels, Inc., 198 N.J. 511, 514 (2009) ("by its own explicit terms, the Used Car Lemon Law never was intended to substitute for the CFA; on the contrary, it is additive, intended to supplement the CFA's 'rights and remedies'"). The distinction is highlighted by that nature of the proofs required to establish a claim. Unlike the CFA, under the Lemon Law "a plaintiff need not present expert objective evidence of a defect; rather, a plaintiff may present non-technical lay testimony concerning objective facts and establish a prima facie case." Christelles v. Nissan Motor Corp., U.S.A., 305 N.J. Super. 222, 228-29 (App. Div. 1997).

Wheels, Inc., 198 N.J. at 526). "When initially enacted, the CFA addressed the elimination of sharp practices and dealings in the marketing of merchandise [and has been c]ontinuously expanded by the Legislature over the years, [so that its] reach now extends beyond 'fast-talking and deceptive merchant[s]' to protect the public even when a merchant acts in good faith." Ibid. (third alteration in original). It "is applicable to commercial transactions." Id. at 443.

To prevail under the CFA, a plaintiff must prove (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) "a causal relationship between the unlawful conduct and the ascertainable loss." Dugan, 231 N.J. at 52. "Unlawful" business practices include "the act, use, or employment by any person of . . . unconscionable commercial practice[.]" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 121-22 (2014) (quoting N.J.S.A. 56:8-2). It requires "fraudulent, deceptive or other similar kind of selling or advertising practices." Id. at 122.

"The limiting nature of the requirement [for proof of an ascertainable loss] allows a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA." Dugan, 231 N.J. at 53 (quoting Thiedemann, 183 N.J. at 246). To satisfy the ascertainable loss prong of the prima facie standard, the plaintiff "must suffer a definite, certain and measurable loss,

rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009). "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." Thiedemann, 183 N.J. at 248. "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle . . . ." Ibid.

Here, accepting all of plaintiff's allegations as true, plaintiff did not claim under the CFA any unlawful conduct by defendant or an ascertainable loss it experienced due to defendant's conduct. Instead, plaintiff argued that defendant's failure to reply to correspondence from plaintiff's counsel prior to the start of litigation is an "unconscionable commercial practice" or "fraudulent [or] deceptive" act. Similarly, it contends that it was unconscionable for defendant to "enable" BMWFS to seek the deficiency balance from plaintiff after the resale. We reject plaintiff's arguments.

There is nothing unconscionable under the CFA about not responding to a letter, especially where, as here, the recipient believes it had no responsibility for the subject claim. Moreover, as to plaintiff's claims about BMWFS's collection efforts, defendant could not nor did it pursue any remedies against plaintiff for its breach of

its lease because defendant was not a party to the agreement. Those actions were taken by BMWFS alone.

Equally without support was plaintiff's claim that it suffered an ascertainable loss. Even if plaintiff had offered any evidence as to defendant's "unconscionable practices," it failed to produce any required specific proof as to its ascertainable loss. See Thiedemann, 183 N.J. at 252 (stating that, in the absence of expert evidence as to a vehicle's loss in value, "resort to common knowledge or common sense" cannot "provide the needed additional support" for the plaintiff's claim). In a CFA action premised upon an automobile's defects, "[p]laintiffs needed to produce specific proofs to support or infer a quantifiable loss in respect of their benefit-of-the-bargain claim; subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the CFA remedies." Ibid. Accordingly, plaintiff's claims of harm or injury to Cho, who was not a party to this action, or as a result of BMWFS actions could not satisfy plaintiff's burden at trial.

The same deficiency holds true for plaintiff's breach of warranty claim. A prima facie case of breach of an express warranty requires only "evidence of non-performance by the warrantor." Ford Motor Credit Co., LLC v. Mendola, 427 N.J. Super. 226, 241-42 (App. Div. 2012). Here, the record is devoid of any evidence

that BMW breached its warranty through non-performance. The vehicle's lengthy service history indicates that BMW performed all repairs covered by the vehicle's warranty as well as the additional tire warranty that plaintiff purchased, all at no cost to plaintiff. However, even if plaintiff could establish that "the repair obligations by defendant were never properly honored," it is well-settled that the proper "repair and inspection" of an automobile requires expert testimony, which plaintiff did not provide. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 407-08 (2014) (citing Ford Motor Credit Co., 427 N.J. Super. at 236-37).

While we continue to hew to our holding in Cho that dipositive motions should not be decided in limine, we recognize that in circumstances such as those here, the effect of evidentiary rulings can result in a trial court being left with no issues in need of a trial, warranting the dismissal of a claim as a matter of judicial economy. See Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J. Super. 320, 238 (App. Div. 2004) ("involuntary dismissal . . . may be employed . . . in the interests of justice and judicial economy when, at the start of trial, plaintiff has insufficient evidence to proceed"). Accordingly, under the unique circumstances of this case, we discern no abuse of the court's discretion in dismissing plaintiff's claims in limine.

A-2517-17T1

Affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2517-17T1